[Civ. No. 21017. Third Dist. Mar. 25, 1982.]

ELMER McBRIDE, Plaintiff and Respondent, v.
FARMERS INSURANCE GROUP, Defendant and Appellant.

**COUNSEL**

Kroloff, Belcher, Smart, Perry & Christopherson and Christopher Engh for Defendant and Appellant.

Mills & Westerberg and Richard F. Mills for Plaintiff and Respondent.

## OPINION

**PUGLIA, P. J.**—This appeal involves the interpretation of an insurance contract to resolve a question of coverage. The issue here is whether a liability insurance policy covering the insured's car supplies excess coverage for plaintiff's injuries; the injuries were sustained in an accident which occurred while the insured was driving her father's automobile rather than her own car. The trial court found the terms of the policy ambiguous and conflicting and construed the policy in favor of coverage. We shall reverse.

While the insured, Gaylene Perry, was driving her father's automobile with his permission, she was involved in an accident in which plaintiff Elmer McBride was injured. McBride filed suit against Gaylene to recover for injuries sustained in the accident.

At the time of the accident, Gaylene's automobile was in need of repair and unserviceable; consequently she had borrowed her father's car. At all relevant times, Gaylene and her father, George Perry, were residents of the same household.

George's automobile was insured by defendant Farmers Insurance Group (Farmers) with liability limits of $15,000 per person and $30,000 per accident. Gaylene's automobile was also insured by Farmers with identical limits.

After McBride filed suit against Gaylene, Farmers conceded that George's policy was applicable to the loss and paid to McBride the policy limits of George's policy. Thereafter, McBride brought the instant declaratory relief action, seeking a declaration that the policy issued to Gaylene applies as excess coverage to the accident in question. (The parties stipulated the present action could be filed by McBride without an assignment from Gaylene.) The trial court found certain provisions of the policy conflicting and ambiguous, and ruled in favor of a finding of coverage. Farmers appeals.

The principles applicable to the interpretation of insurance contracts are well established. ■ Words used in a policy of insurance are to be interpreted according to the plain meaning which a layman would ordinarily attach to them, that is, "'the policy should be read as a layman would read it and not as it might be analyzed by an attorney or an

insurance expert.'" (*Otter* v. *General Ins. Co.* (1973) 34 Cal.App.3d 940, 949 [109 Cal.Rptr. 831].) ■ "[A]ny ambiguity or uncertainty in an insurance policy is to be resolved against the insurer and... if semantically permissible, the contract will be given such construction as will fairly achieve its object of providing indemnity for the loss to which the insurance relates." (*Harris* v. *Glens Falls Ins. Co.* (1972) 6 Cal.3d 699, 701 [100 Cal.Rptr. 133, 493 P.2d 861].) An "ambiguity [however] cannot be based on a strained instead of reasonable interpretation of a policy's terms." (*Highlands Ins. Co.* v. *Universal Underwriters Ins. Co.* (1979) 92 Cal.App.3d 171, 175 [154 Cal.Rptr. 683].) Thus, an "ambiguity is not to be found where none exists, and the contract must be interpreted as written, ..." (12 Couch on Insurance (2d ed. 1981) § 45:221, p. 513.) ■ Finally, "'In the construction of insurance policies, it is the settled rule that the whole of the contract is to be taken together, each clause helping to interpret the other.' [Citations.]" (*Furtado* v. *Metropolitan Life Ins. Co.* (1976) 60 Cal.App.3d 17, 25 [131 Cal.Rptr. 250].)

Turning to the applicable provisions of Gaylene's policy, in part I, coverages A and B, Farmers agrees: "To pay all damages the insured [Gaylene] becomes legally obligated to pay because of: [¶] (A) bodily injury to any person, and/or (B) damages to property arising out of the ownership, maintenance or use, including loading and unloading, of the described automobile *or a non-owned automobile.*" (Italics added.)

A nonowned automobile is defined as "An automobile not owned by or regularly or frequently used by the named insured or any resident of the same household, *other than a substitute automobile.*" (Italics added.)

The policy defines "substitute automobile" as "an automobile not owned by the named insured or any resident of the same household, while temporarily used with the permission of the owner, as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

Finally, the policy provides that "With respect to a substitute or nonowned automobile, Coverages A, B, ... shall be excess insurance over any other collectible insurance of any kind available to the insured irrespective of whether such other insurance was obtained by a person other than the named insured."

In reading and construing these provisions, the insured is first informed that coverage is provided for injury to person or property for which the insured is legally responsible whether the insured is driving the insured vehicle or a nonowned vehicle. The policy definition of "nonowned automobile" informs the insured that a "nonowned automobile" is every automobile other than the two categories expressly excluded, ((1) a vehicle owned by the insured or by a member of the same household or (2) a vehicle regularly or frequently used by the insured or by a member of the same household), but such exclusions notwithstanding, a "nonowned automobile" includes a "substitute automobile." At that point, to perfect the definition of "nonowned automobile," the policy refers the reader to the definition of "substitute automobile," which as we have seen includes any car used by the named insured while his or her car is temporarily out of commission, except for those automobiles owned by a member of the same household. In other words, every automobile which meets the definition of a "substitute automobile" is a "nonowned automobile."

■ The trial court found the policy definitions of "nonowned automobile" and "substitute automobile" to be in conflict. We disagree. If, as settled principles dictate, the policy is read as a whole, a reading of both definitions informs Gaylene that should her car break down, need service, etc., she is provided coverage while driving a temporary replacement vehicle *provided that vehicle is not owned by a member of the same household.* Thus, if Gaylene were driving a car not owned by her father (or another member of the same household) but regularly used by him, Gaylene's policy would apply provided she was using that vehicle as a replacement while her car was temporarily out of commission. Here, however, the car Gaylene was operating at the time she collided with McBride was owned by a member of the same household (i.e., her father); there is thus no coverage under Gaylene's policy since a car owned by a member of the same household is expressly excluded from the categories both of "substitute automobile" and "nonowned automobile" as those terms are defined in the policy.[1]

[1]We do not mean to suggest that the definition of "nonowned automobile" could not have been more clearly expressed. Indeed, the definition could be read to mean that a "nonowned automobile" is "... an automobile ... other than a substitute automobile." Such an interpretation would be nonsensical, as it would exclude an insured from coverage while driving *any* substitute automobile, regardless of its owner, contrary to the obvious intent of the policy as clearly expressed therein and acknowledged by Farmers to *include* "substitute automobiles" within the class of "nonowned automobiles" for which coverage is provided. Accordingly, we agree with the parties that the definition of "nonowned automobile" should not be interpreted so as to exclude a "substitute automobile" from coverage. Resolving this ambiguity in favor of coverage of substitute

There are compelling policy reasons for excluding from the definition of both "nonowned automobile" and "substitute automobile" a car owned by a member of the same household, not the least of which is to prevent members of a family who own more than one car from using them interchangeably yet insuring only one such vehicle. (See *Southern Farm Bur. Cas. Ins. Co.* v. *Williams* (1976) 260 Ark. 659 [543 S.W.2d 467, 470].) Moreover, these exclusions prevent a situation which might otherwise provide windfall double coverage to the insured. Here, Farmers, which also insures George's automobile, has already paid the limits of George's policy to McBride. If Farmers did not exclude from the definition of substitute automobile "vehicles owned by members of the same household," Farmers would have to pay twice for the same incident: once on the policy insuring George's car and again on the policy in which Gaylene is the named insured. Yet, Gaylene did not bargain for double coverage, nor could or should she have reasonably expected the same. Thus, the exclusion of an "automobile owned by a resident of the same household" within the definition of "substitute automobile" makes certain that only one policy will be given effect when a family member who is involved in an accident is driving a car owned by another member of the same household.[2]

When these policy provisions are read together, they inform the insured that there is no coverage if he or she is driving a vehicle *owned* by a member of the same household. Because Gaylene was driving such a vehicle when she collided with McBride, her policy does not apply to the loss in question.

The judgment is reversed.

Blease, J., and Sparks, J., concurred.

A petition for a rehearing was denied April 20, 1982, and respondent's petition for a hearing by the Supreme Court was denied May 20, 1982. Richardson, J., and Reynoso, J., did not participate therein.

---

automobiles is of no aid to plaintiff, however, because the vehicle driven by Gaylene was not a "substitute automobile."

[2]If, however, while Gaylene's car was out of service, she temporarily used a car which was regularly used by her father, but not owned by him, Gaylene's policy would apply since the vehicle would be a "substitute automobile" as defined in the policy; in such case, her father's policy would not apply, since the car is neither a described automobile nor a nonowned automobile as to him.