[Civ. No. 22055. Third Dist. Aug. 17, 1983.]

ATLAS ASSURANCE COMPANY, LTD.,
Plaintiff, Cross-defendant and Respondent, v.
McCOMBS CORPORATION et al.,
Defendants, Cross-complainants and Appellants;
DEANS & HOMER, Cross-defendant and Respondent.

COUNSEL

Roger A. Saevig and Michael G. Dawe for Defendants, Cross-complainants and Appellants.

David Barry, Douglas W. Allan and Barry & Finley for Plaintiff, Cross-defendant and Respondent and for Cross-defendant and Respondent.

OPINION

CARR, J.—In this action by an insurer, Atlas Assurance Company (plaintiff) for declaratory relief against its insured, McCombs Corporation et al. (defendants or McCombs), the trial court granted summary judgment for plaintiff, finding it had no duty to defend or indemnify defendants in the underlying lawsuit. ██ The trial court also granted plaintiff's motion for judgment on the pleadings as to defendants' cross-complaint for breach of duty of good faith and fair dealing. Defendants appeal from the ensuing judgments.[1]

## FACTS

Defendants owned and operated a self-service storage facility in Stockton. They employed William Hartman as a manager of this facility. Herbert and Elizabeth Wheeler were tenants of the facility. In July 1980, a collection of coins and other objects worth approximately $180,000 was stolen from the Wheelers' locker. At the time of the theft, defendants were insured by plaintiff under a "self-service storage operators policy," which included a promise to defend against any suit seeking damages payable under the terms

---

[1]Contemporaneous with oral argument in this matter, plaintiff filed a motion to dismiss the appeal on the basis of mootness. Plaintiff asserted the underlying lawsuit against its insured had been settled (payment having been made by another insurer, Industrial Indemnity) at no cost to its insured, thereby rendering the issues of indemnity and duty to defend moot. Subsequent briefing of the mootness issue has revealed, however, that in consideration of the settlement payment by Industrial Indemnity, McCombs assigned to Industrial Indemnity any rights it might have against plaintiff in the instant proceedings. McCombs' first amended cross-complaint sought, inter alia, indemnification from plaintiff for any amounts it was required to pay in the underlying lawsuit. Through the assignment, Industrial Indemnity became the owner of this claimed right of indemnification and had the option to continue the action in the name of McCombs. (*Stark* v. *Shaw* (1957) 155 Cal.App.2d 171, 182 [317 P.2d 182]; Code Civ. Proc., § 385, subd. (a).) The question of whether plaintiff is ultimately liable for any amounts paid in satisfaction of a claim against its insured has not abated, because Industrial Indemnity now stands in the shoes of its assignor McCombs. Accordingly, the motion to dismiss is denied.

of the policy.[2] Excluded under the policy was coverage for liability arising from any dishonest or criminal act of the insured or their employees or agents.[3]

On October 23, 1980, the Wheelers brought an action against defendants, alleging breach of contract and negligent employment of Hartman resulting in the theft of the Wheelers' property by Hartman. Upon notification of the Wheelers' suit, plaintiff wrote defendants that it felt there was no coverage for the theft by Hartman, but stating it would undertake the defense, reserving the right to have the question of coverage judicially determined. On March 16, 1981, Hartman pled nolo contendere to grand theft of the Wheelers' property. (Pen. Code, § 487, subd. 1.) On April 28, 1981, plaintiff informed defendants by letter of its belief the exclusion was applicable to the Wheelers' lawsuit and gave notice of its intent to withdraw from the defense. Defendants disagreed and demanded continued full coverage. Plaintiff then continued the defense subject to its original reservation of rights and filed this action for declaratory relief.

## Discussion

### I

Defendants first contend the trial court erred in finding the exclusion at issue to be unambiguous[4] and urge the language of the exclusion is reasonably susceptible to an interpretation that coverage existed. Further, that the trial court erroneously failed to consider the declaration of McCombs wherein he stated his interpretation of the exclusion was that coverage was provided.

We conclude the trial court correctly found the exclusion unambiguously placed the Wheeler lawsuit outside the coverage of the policy.

---

[2]The plaintiff agreed: "to defend any suit against the Insured seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the Company may make such investigation and settlement of any claim or suit as it deems expedient; . . ."

[3]The exclusion stated: "This policy does not cover the liability of the Insured: . . . (b) Caused by or resulting from misappropriation, secretion, conversion, infidelity or any dishonest or criminal act on the part of the Insured or other party of interest, his or their employees or agents or any person or persons to whom the property may be entrusted by the Insured; . . ."

[4]This is the general contention which encompasses the further assertions of error in: (1) finding plaintiffs had no reasonable basis for believing the policy provided coverage for this incident; (2) holding *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168] inapplicable; and (3) finding no factual issue as to coverage for the damages sought in the Wheelers' complaint.

█ The provisions of an insurance policy are generally construed under the same rules governing the interpretation of other contracts. (*Gribaldo, Jacobs, Jones & Associates* v. *Agrippina Versicherunges A.G.* (1970) 3 Cal.3d 434, 442 [91 Cal.Rptr. 6, 476 P.2d 406].) █ Doubts as to the meaning of the policy must be resolved against the insurer and any exception to the performance of the basic obligation must be clearly stated so as to apprise the insured of its effect. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168].) █ To determine if extrinsic evidence may be admitted to explain the meaning of a written instrument, the test for admissibility is "whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." (*Pacific Gas & E. Co.* v. *G. W. Thomas Drayage, etc. Co.* (1968) 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373].) A two-step analysis is followed in applying this test. First, to prove the intention of the contracting parties, the court must place itself in the same situation as the parties at the time of making the agreement by provisionally accepting, without actually receiving, all credible evidence concerning the making of the agreement. Second, if the court determines in light of this evidence that the contract is reasonably susceptible to the offered interpretation, the court may admit the evidence to so interpret the contract. "On the other hand, if the court decides in light of this extrinsic evidence that the contract is not reasonably susceptible to the offered interpretation, then the evidence is irrelevant and inadmissible to interpret the contract." (*Blumenfeld* v. *R. H. Macy & Co.* (1979) 92 Cal.App.3d 38, 45 [154 Cal.Rptr. 652].)

█ Plaintiff offered no extrinsic evidence on the meaning of the exclusionary clause. Defendants offered only the declaration of McCombs, who stated he had read the exclusion "and interpreted it to mean that the policy would not cover for theft of property *entrusted by the Insured to its agents or employees.*" (Italics added.) The declaration does not indicate when Mr. McCombs first read the exclusion, nor does it indicate plaintiff said or did anything to foster such an interpretation. Standing alone, Mr. McCombs' understanding of the exclusion does nothing to show the intention of the parties at the time the agreement was made. Accordingly, the interpretation of the exclusion does not turn on the credibility of extrinsic evidence and is solely a question of law on which we make an independent examination. (*Gribaldo, Jacobs, Jones & Associates* v. *Agrippina Versicherunges, A.G., supra,* 3 Cal.3d at pp. 445-446.)

█ The exclusion removed liability for any dishonest or criminal act "on the part of the Insured or other party of interest, his or their employees or agents or any person or persons to whom the property may be entrusted by the Insured." Defendants read the phrase " 'to whom the property may be

entrusted by the Insured'" as modifying everything following the words "party of interest"; i.e. employees, agents and persons or persons. Under this reading, the exclusion applies only if the insured first *entrusts* the property to the employee or agent who then commits a dishonest act. This interpretation leads to inconsistent coverage based on who stole the property and the circumstances of the theft. The exclusion was clearly intended to apply consistently to the insured, his employees and any person to whom the property was entrusted by the insured. Moreover, defendant's interpretation would require the use of a conjunction before the words "his or their employees" so that all the words which follow could be read as one phrase rather than two. Reading the phrase "to whom the property may be entrusted" as modifying "employees" requires we assume the policy adopted an incorrect sentence construction. An ambiguity cannot be based on a strained and grammatically incorrect reading of the policy's terms. (*McBride* v. *Farmers Insurance Exchange* (1982) 130 Cal.App.3d 258, 261 [181 Cal.Rptr. 539].) The alternative interpretation must be one to which the policy is *reasonably* susceptible. Here the exclusion admits of only one interpretation: there is no coverage for any dishonest or criminal act on the part of the insured or other party of interest, on the part of his or their employees or agents, or on the part of any person or persons to whom the property may be entrusted by the insured.

The exclusion was unambiguous as a matter of law, and the trial court properly rejected McCombs' interpretation of the exclusion as irrelevant. (*Blumenfeld* v. *R. H. Macy & Co., supra,* 92 Cal.App.3d at p. 45.) McCombs was simply mistaken in his subjective and apparently undisclosed belief. ■ "Under the objective test of contract formation, a 'meeting of the minds' is unnecessary. A party is bound, even if he misunderstood the terms of a contract and actually had a different, undisclosed intention." (*Id.,* at p. 46.)

Our conclusion the exclusion was not ambiguous disposes of defendant's contention the trial court erred in finding *Gray* v. *Zurich Insurance Co., supra,* inapplicable to these facts. *Gray* was a watershed case on the insurer's duty to defend. Dr. Gray was sued for assault and his insurer refused to defend on the ground the policy excluded coverage for intentional torts. (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 267.) In determining the insurer was obligated to defend Dr. Gray, the court reasoned the provisions regarding the duty to defend were uncertain since the question of the intentional tort would not be resolved until the termination of the very action the insurer should have defended. (*Id.,* at p. 272.) Interpreting this uncertain promise in favor of the insured, it was reasonable for Dr. Gray to expect protection from the insurer until the underlying suit was resolved. (*Ibid.*)

The present exclusion unambiguously applied to a theft by an employee of the insured. Hartman's criminal conviction for theft resolved any uncertainty as to the duty to defend in the civil action against defendants. The ambiguity which existed in *Gray* was not present here and the trial court correctly found *Gray* inapplicable.

## II

Defendants further contend the trial court erred in finding Hartman actually committed the theft. They urge the receipt of Hartman's plea was in direct violation of statute and the evidence upon which the trial court made an independent examination of Hartman's guilt was inadmissible hearsay. We find these contentions without merit.

Plaintiff requested the trial court to take judicial notice of portions of the file in the criminal prosecution against Hartman. As appears from the order granting summary judgment, the request was granted. Defendant asserts Evidence Code section 1300 prohibited judicial notice of the plea of nolo contendere. At the time the motion was decided, this section provided: "Evidence of a final judgment adjudging a person guilty of a crime punishable as a felony is not made inadmissible by the hearsay rule when offered in a civil action to prove any fact essential to the judgment *unless the judgment was based on a plea of nolo contendere.*" (Italics added.) Facially the statute appears to support defendant's position. However, the Law Revision Commission comment to section 1300 notes: "[t]he exclusion of judgments based on a plea of nolo contendere from the exception in Section 1300 is a reflection of the policy expressed in Penal Code section 1016." (Evid. Code, § 1300, 29B West's Ann. Evid. Code (1966 ed.) p. 343; Deering's Ann. Evid. Code (1966 ed.) p. 264.) Penal Code section 1016, subdivision 3, provided at the time that the effect of a nolo contendere plea "shall be the same as that of a plea of guilty, but the plea may not be used *against the defendant* as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based." (Italics added.) The inference is clear that the exclusion of a nolo contendere plea from the reach of Evidence Code section 1300 was intended to apply only where the plea was offered *against the defendant* in a subsequent civil suit for the same conduct to which the defendant pled. Hartman's plea was not being offered against Hartman, but against the defendants. It was therefore not inadmissible within the meaning of former Evidence Code section 1300.[5]

---

[5]Even were we to conclude former Evidence Code section 1300 barred judicial notice of the plea, remand would be futile as subsequent amendments to both Evidence Code section 1300 and Penal Code section 1016, subdivision 3, have made a nolo contendere plea to a felony charge admissible against a hearsay objection. Evidence Code section 1300 now provides: "Evidence of a final judgment adjudging a person guilty of a crime punishable as

■ Moreover, the trial court made an independent determination of Hartman's guilt based on Hartman's admissions as set forth in the probation report and at the sentencing hearing in the criminal action. Such a procedure is authorized by *Estate of McGowan* (1973) 35 Cal.App.3d 611 [111 Cal.Rptr. 39]. In *McGowan,* the decedent's wife pled nolo contendere to the involuntary manslaughter of the decedent. The decedent's sister and heir appealed from a judgment awarding one-half of the decedent's insurance and retirement benefits to the wife. (*Id.,* at p. 613.) The court held, "the court in any subsequent civil proceeding must independently examine the facts in order to determine whether the defendant actually committed the offense alleged for purposes of the particular civil proceeding [citation]." (*Id.,* at p. 618.) In a footnote the court stated, "[t]his redetermination for purposes of the civil proceeding is clearly different from the use of the plea 'against the defendant as an admission in any civil suit,' prohibited by [former] Penal Code section 1016, subdivision 3." (P. 618, fn. 10.) The court reversed the judgment as the probate court had made an independent examination and found the wife unlawfully and intentionally killed her husband. (Pp. 618-619.)

Defendants concede the applicability of the procedure authorized in *McGowan,* but urge the trial court failed to examine the facts of the theft, and instead relied on Hartman's admissions, which were inadmissible hearsay. Hartman's admissions were admissible pursuant to Evidence Code section 1224, which provides: "When the liability, obligation, or duty of a party to a civil action is based in whole or in part upon the liability, obligation, or duty of the declarant, or when the claim or right asserted by a party to a civil action is barred or diminished by a breach of duty by the declarant, evidence of a statement made by the declarant is as admissible against the party as it would be if offered against the declarant in an action involving that liability, obligation, duty, or breach of duty." Here, the plaintiff's obligation to defend and indemnify defendants depended on Hartman's criminal liability or lack thereof. Conversely, defendants' right to such indemnity and defense would be barred by Hartman's criminal conduct. Accordingly, Hartman's admissions were admissible against defendants if they would have been admissible against Hartman in an action involving his liability for the theft. In the latter case they would be admissible as admissions of a party. (Evid. Code, § 1220.) They were therefore admissible against defendants.

---

a felony is not made inadmissible by the hearsay rule when offered in a civil action to prove any fact essential to the judgment *whether or not* the judgment was based on a plea of nolo contendere." (Italics added.) Penal Code section 1016, subdivision 3, now provides that the effect of a plea of nolo contendere "to a crime punishable as a felony, shall be the same as that of a plea of guilty *for all purposes.*" (Italics added.)

The trial court's finding that Hartman's admissions establish that he was in fact the thief is supported by substantial evidence. In pleading for leniency, Hartman stated he had stopped and turned himself in, that he could have left the country with a good deal of money to avoid extradition, and that his object and intention was to reimburse the Wheelers. There was no error in the trial court's independent examination of the facts of Hartman's criminal case to determine that Hartman had indeed been the thief. (*Estate of McGowan, supra,* 35 Cal.App.3d at p. 618.)

III

■ Defendants contend plaintiff was required to provide coverage even assuming the applicability of the exclusion for Hartman's theft. They contend their liability in the underlying action was premised on *their* negligent acts (negligent employment of Hartman and breach of contract through the conversion by Hartman) and not on the theft by Hartman. Since these negligent acts were not excluded from the policy, it is urged, the plaintiff was required to provide coverage. Defendants are wrong.

Defendants rely principally on *State Farm Mut. Auto. Ins. Co. v. Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123]. In *Partridge* the insured negligently filed down the trigger mechanism of a weapon to produce " 'hair trigger action' " (P. 97.) While hunting rabbits from a vehicle, the insured drove the vehicle off the road, hit a bump and the gun discharged, hitting a passenger. (Pp. 97-98.) The issue presented was whether coverage was provided by both the insured's automobile policy and his homeowner's personal liability policy. The latter contained an exclusion for "bodily injury . . . arising out of the . . . use of . . . any motor vehicle.' " (P. 99.) The court held there was coverage under the homeowner's policy despite the exclusion because the accident was *jointly* caused by an insured risk (the filing of the trigger mechanism) and an uninsured risk (the negligent driving). Where two such risks constitute concurrent proximate causes of an accident, the insurer is liable so long as one of the causes is covered by the policy. (P. 102.)

Subsequent cases have demonstrated the crucial factor in *Partridge* was that the two causes of the injury were *separate* and *independent* of one another. In *State Farm Fire & Cas. Co. v. Camara* (1976) 63 Cal.App.3d 48, 50 [133 Cal.Rptr. 600], the insured was charged with negligently designing, constructing and assembling a dune buggy. He then drove the dune buggy off a very steep hillside, resulting in injuries to the plaintiff, his passenger. The homeowner's policy, under which plaintiff sought to recover, contained an exclusion for " 'bodily injury . . . arising out of the ownership, maintenance, operation, use, loading or unloading of: . . . [a]ny

motor vehicle owned or operated by . . . any insured.'" (P. 53.) This court held that even assuming the designing of the dune buggy was outside the exclusion, this nonvehicle-related cause (covered) must be independent of the vehicle-related cause (the negligent driving—excluded) before there would be liability under the policy. "Although the operation or use of the dune buggy was not the sole cause of the accident, any contributing *design* cause was dependent upon such operation or use, such that *any liability for negligent design necessarily arose out of the operation or use of the motor vehicle.* [¶] In other words, the *only* way in which plaintiff could have been exposed to the claimed design risk was through the operation or use of the motor vehicle. Under such circumstances defendant's asserted liability could not but arise out of the ownership, maintenance, operation or use of the vehicle; it was therefore excluded." (P. 55; italics added.)

We reached a similar conclusion in *Safeco Insurance Co.* v. *Gilstrap* (1983) 141 Cal.App.3d 524 [190 Cal.Rptr. 425], wherein the insureds' son, Donald, had stored a motorcycle in the insureds' garage. The insureds' youngest son, Michael (14), removed the motorcycle and took a friend for a ride. A collision occurred and the friend sued the insureds on a negligent entrustment theory. The homeowner's policy at issue contained a motor vehicle exclusion substantially similar to that in *Camara.* (*Safeco Insurance Co.* v. *Gilstrap, supra,* 141 Cal.App.3d at p. 526.) We held the exclusion applicable since any liability for negligent entrustment of motorcycle (the covered risk) could arise only from the use of the motorcycle (the excluded risk). (Pp. 530-531.)

While both *Camara* and *Gilstrap* involved an exclusion for liability arising from the use of an instrumentality (a motor vehicle), the analysis is directly applicable to this case. The theories of liability asserted against McCombs were: (1) negligence in hiring a person McCombs knew, or should have known, was likely to steal from the storage facility; and (2) breach of contract in that McCombs' employee converted or stole the Wheelers' property. The negligent entrustment theory, advanced in *Gilstrap,* is the equivalent of the negligent hiring of a thief advanced in the instant case. "Until their son incompetently operated and used the motorcycle and caused injury, no liability against the entrustors arose." (*Safeco Insurance Co.* v. *Gilstrap, supra,* 141 Cal.App.3d at p. 530.) Similarly, until Hartman exercised his alleged propensity as a thief, no liability against McCombs arose. No liability can arise from the claimed risk in negligently hiring *a thief* unless the thief actually steals something. It is the basing of liability specifically on the negligent hiring *of a thief* which renders McCombs' alleged negligent act *dependent* upon the excluded theft as concurrent causes of the loss.

The breach of contract theory is, if anything, even *more* dependent on Hartman's theft because the theft is the very act which is alleged as the breach. The *only* way McCombs could be liable for the claimed breach of contract is through the theft. (*State Farm Fire & Cas. Co.* v. *Camara, supra,* 63 Cal.App.3d at p. 55.) Under the facts of this case neither the breach of contract theory, nor the negligent hiring theory, were independent of the theft by McCombs employee. *Partridge* is therefore inapposite, and the asserted theories of liability were excluded from coverage.

This conclusion comports with the reasonable expectations of the parties. (See *Herzog* v. *National American Ins. Co.* (1970) 2 Cal.3d 192, 197 [84 Cal.Rptr. 705, 465 P.2d 841]; *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 269.) The policy excluded coverage for liability "[c]aused by or resulting from . . . conversion, . . . or any . . . criminal act" by the insured's employee. It strains reason to believe that a reasonable person in the position of McCombs would have understood these words to mean that the policy provided coverage for the theft by Hartman. ▇▇ The plain meaning of the exclusion is precisely the opposite. "We may not, under the guise of strict construction, rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid." (*Safeco Insurance Co.* v. *Gilstrap, supra,* 141 Cal.App.3d at p. 533, citing *Bankert* v. *Threshermen's Mut. Ins. Co.* (1981) 105 Wis.2d 438 [313 N.W.2d 854, 857].) The exclusion cannot reasonably be construed to permit coverage.

## IV

▇▇ Defendants finally contend the trial court abused its discretion in granting judgment on the pleadings on their first amended cross-complaint for breach of duty of good faith and fair dealing. ▇▇ " 'Since judgment on the pleadings is similar to a judgment following the sustaining of a demurrer, the standard of appellate review is the same. ▇▇ "Like the demurrer, the motion . . . is confined to the *face of the pleading under attack.*" ' " (*Fosgate* v. *Gonzales* (1980) 107 Cal.App.3d 951, 957 [166 Cal.Rptr. 233]; italics in original.) This unqualified statement may be misleading, however, "[a]s . . . various outside matters may be looked to under the doctrine of judicial notice . . . ." (*Ibid.,* citing 4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 162, pp. 2817-2818.) A motion for judgment on the pleadings should not be granted where it is possible to amend the pleadings to state a cause of action (*Tiffany* v. *Sierra Sands Unified School Dist.* (1980) 103 Cal.App.3d 218, 225 [162 Cal.Rptr. 669]), but the burden of demonstrating such an abuse of discretion is on the appellant. (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737].)

There is in every contract of insurance an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. (*Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658 [328 P.2d 198].) Accepting as true all the material and issuable facts pled in defendants' cross-complaint (*Tiffany v. Sierra Sand Unified School Dist., supra,* 103 Cal.App.3d at p. 225), defendants allege the breach of this duty occurred through plaintiff's vacillations on whether to defend the Wheeler lawsuit and the filing of the declaratory relief action. Absent other facts, the mere filing of an action to declare the insurer's rights and duties relative to an insurance policy cannot form the basis of breach of the duty of good faith and fair dealing. Assuming the insurer has not otherwise abandoned, compromised or rejected the insured's claim, an action seeking declaratory relief does not in any way frustrate the insured's enjoyment of his contract rights. (*Sawyer v. Bank of America* (1978) 83 Cal.App.3d 135, 139 [145 Cal.Rptr. 623].) Moreover, the insurer has a statutory right to seek such a declaration of his rights under the contract. (Code Civ. Proc., § 1060.) Therefore, any breach of plaintiff's duty of good faith and fair dealing must necessarily have arisen from the alleged "vacillations" in conducting the defense.

The cross-complaint alleges that on April 28 plaintiff notified defendants their defense on behalf of defendants in the Wheelers' suit was to be terminated. Assuming plaintiff had a duty to defend at this point, defendants have stated a cause of action. However, the trial court took judicial notice that Hartman pled nolo contendere to the theft on March 16, 1981, and made his damaging admissions on April 6, 1981. On April 28, 1981, when the no-coverage letter was sent, plaintiff had no duty to defend or indemnify the Wheeler suit; nor could defendants have any *reasonable* expectation of such a defense, because of Hartman's conviction and the unambiguous exclusion. (*Gribaldo, Jacobs, Jones & Associates v. Agrippina Versicherunges A.G., supra,* 3 Cal.3d at p. 448.) The April 28 letter did nothing to injure the defendants' right to receive the benefits of the policy as they had no right to receive this particular benefit. Moreover, the subsequent letter by plaintiff, *resuming* the defense pending a judicial determination, shows plaintiff acted without the requisite bad faith (*Sawyer v. Bank of America, supra,* 83 Cal.App.3d at p. 139), and was making a good faith effort to ensure a defense in the Wheeler suit until such time as the duty to defend could be judicially determined.

The trial court correctly found the first amended cross-complaint failed to state a cause of action. Defendants did not seek leave to amend below and do not argue on appeal they should be given such an opportunity, preferring

to rely on the cross-complaint as stated. Accordingly, there was no abuse of discretion in granting plaintiff's motion for judgment on the pleadings.

The judgment is affirmed.

Regan, Acting P. J., and Sims, J., concurred.

A petition for a rehearing was denied September 15, 1983.