555 A.2d 903

**WEXLER KNITTING MILLS, Appellant,**

**v.**

**ATLANTIC MUTUAL INSURANCE CO., Lewis P. Siegel & Sons, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued Oct. 25, 1988.

Filed Feb. 9, 1989.

Reargument Denied March 30, 1989.

Alan C. Milstein, Philadelphia, for appellant.

Francis T. McDevitt, Philadelphia, for appellees.

Before CIRILLO, President Judge, and WIEAND and McEWEN, JJ.

WIEAND, Judge:

In this appeal we are called upon to interpret an exclusion clause in an "all risks" policy of insurance to determine whether coverage was provided for losses sustained as a result of employee thefts. The trial court held that losses sustained by virtue of employee thefts were excluded from

coverage under the policy and entered a compulsory non-suit in the employer's action brought to recover such losses. When the court thereafter refused to remove the non-suit on post-trial motion, the employer appealed.

Wexler Knitting Mills (Wexler) is a Philadelphia based sweater manufacturer employing 175 to 200 persons. In 1982, Wexler's officers began to suspect that employee thefts were occurring and hired a private detective to investigate. Their suspicions were confirmed. Empty sweater boxes were found in an abandoned stairwell, chicken wire which cordoned off an area in which finished sweaters were stored was found to have been cut, and significant quantities of sweaters and yarn were determined to be missing. Eventually, an employee was apprehended as he left the mill with goods having a value of $212.50. An inventory revealed that sweaters and yarn having a value of $214,836.00 were missing.

Wexler was insured under an "all risks" policy which had been issued by Atlantic Mutual Insurance Company (Atlantic Mutual) and which had a general liability limit of $1,040,-000.00. The policy insured against all risks to personal property except those risks which were expressly excluded. Among the perils excluded were the following:

(f) Loss or damage due to shortage disclosed on taking inventory; or unexplained or mysterious disappearance (except property in the custody of bailees or carriers for hire);

(g) Loss or damage, except loss or damage by fire or explosion, caused by or arising out of infidelity or any dishonest act on the part of the Insured or other party of interest, his or their employees or agents or any person or persons to whom the property may be entrusted (carriers for hire excepted); or resulting from the Insured voluntarily parting with title or possession of any property if induced to do so by any fraudulent scheme, trick, device or false pretense;

Wexler purchased several additional endorsements to augment the general coverage provided by the policy. One

such endorsement, entitled Employee Dishonesty Commercial Blanket Coverage, covered "[l]oss of Money, Securities and other property which the Insured shall sustain ... through any fraudulent or dishonest act or acts committed by any of the Employees, acting alone or in collusion with others." The maximum amount recoverable for this type of loss was $20,000.00.

Wexler filed a timely proof of loss, and Atlantic Mutual paid in response thereto the sum of $20,000.00. However, it denied coverage under the general provisions of the "all risks" policy, contending that losses caused by employee thefts were excluded from such coverage. The present action followed; it ended with the trial court's refusal to remove the compulsory non-suit which it had entered at trial.

■ The granting of a compulsory non-suit is proper when it is clear that the plaintiff has not established a right of recovery. *Thomas v. Duquesne Light Co.*, 376 Pa.Super. 1, 8, 545 A.2d 289, 292–293 (1988); *Storm v. Golden*, 371 Pa.Super. 368, 373, 538 A.2d 61, 63 (1988). In an action based upon an "all risks" insurance policy, the burden is upon the insured to show that a loss has occurred; thereafter, the burden is on the insurer to defend by showing that the loss falls within a specific policy exclusion. *Miller v. Boston Ins. Co.*, 420 Pa. 566, 218 A.2d 275 (1966). Although the burden of proving the applicability of an exclusionary provision rests initially on the insurer, "when the existence of facts constituting an exception or exclusion is admitted by the plaintiff or is established by uncontradicted testimony in plaintiff's case ... such burden is removed from the defendant-insurer." 19 P.L.E. Insurance § 464.

■ The parties do not dispute that a loss occurred. Their dispute centers, rather, on the interpretation to be placed upon the language of the policy which excludes coverage for losses caused by "infidelity or any dishonest act on the part of the insured or other party of interest, his or their employees or agents or any person or persons to

whom the property may be entrusted." Wexler contends that the language must be read to exclude only those losses which were caused by a dishonest act on the part of an employee "to whom the property [had been] entrusted," and it argues that the thieves in the instant case had not been entrusted with the goods which they stole. We reject this argument.

The exclusionary language is clear. It applies to losses or damage caused by the insured, the insured's employees and any person to whom the property had been entrusted by the insured. The language does not refer only to losses caused by an employee to whom the property had been specifically entrusted. Appellant will not be permitted to create an ambiguity in the language of the exclusion by a strained and grammatically incorrect reading of the terms of the policy. The policy clearly provides in unambiguous terms that there is no coverage for losses caused by or arising out of infidelity or dishonest act on the part of the insured or its employees.

Although there are no Pennsylvania decisions which are controlling of our decision in this case, our holding is consistent with the decision reached by a California Court of Appeals in *Atlas Assurance Co., Ltd. v. McCombs Corp.,* 146 Cal.App.3d 135, 194 Cal.Rptr. 66 (1983). There, the insured had argued that language similar to that in the instant case excluded coverage only for losses occurring to property specifically entrusted to an employee. The California court rejected the argument, saying:

The exclusion removed liability for any dishonest or criminal act "on the part of the Insured or other party of interest, his or their employees or agents or any person or persons to whom the property may be entrusted by the Insured." Defendants read the phrase " 'to whom the property may be entrusted by the Insured' " as modifying everything following the words "party of interest"; i.e. employees, agents and persons or persons. Under this reading, the exclusion applies only if the insured first entrusts the property to the employee or agent who then

commits a dishonest act. This interpretation leads to inconsistent coverage based on who stole the property and the circumstances of the theft. The exclusion was clearly intended to apply consistently to the insured, his employees and any person to whom the property was entrusted by the insured. Moreover, defendant's interpretation would require the use of a conjunction before the words "his or their employees" so that all the words which follow could be read as one phrase rather than two. Reading the phrase "to whom the property may be entrusted" as modifying "employees" requires we assume the policy adopted an incorrect sentence construction. An ambiguity cannot be based on a strained and grammatically incorrect reading, of the policy's terms. (*McBride v. Farmers Insurance Group* (1982) 130 Cal. App.3d 258, 261, 181 Cal.Rptr. 539.) The alternative interpretation must be one to which the policy is reasonably susceptible. Here the exclusion admits of only one interpretation: there is no coverage for any dishonest or criminal act on the part of the insured or other party of interest, on the part of his or their employees or agents, or on the part of any person or persons to whom the property may be entrusted by the insured.

The exclusion was unambiguous as a matter of law, and the trial court properly rejected McCombs' interpretation of the exclusion as irrelevant. (*Blumenfeld v. R.H. Macy & Co.*, *supra*, [1979] 92 Cal.App.3d [38] at p. 45, 154 Cal.Rptr. 652.)

*Id.* at 143–144, 194 Cal.Rptr. at 70. We find the reasoning of the California court persuasive. Moreover, in other cases interpreting similar language, the courts of sister states have not found it necessary that an employee be specifically entrusted with the goods. See, e.g.: *C & H Plumbing and Heating Inc. v. Employers Mutual Casualty Co.*, 264 Md. 510, 287 A.2d 238 (1972).

Appellant's argument that the policy exclusion is ambiguous and, therefore, must be construed in appellant's favor is wholly without merit. The language is clear and unambig-

uous. The only ambiguity is that which appellant seeks to create by its strained and grammatically incorrect reading of the exclusionary language. "To construe this contract as plaintiff would have us do would not resolve an ambiguity against the insurer, but would change the contract and read into it an undertaking which is not there." *Gottesfeld v. Mechanics and Traders Ins. Co.*, 196 Pa.Super. 109, 117–118, 173 A.2d 763, 767 (1961). The exclusion under construction unambiguously applies to loss or damage caused by a dishonest act: (1) on the part of the Insured; (2) his employees or agents; or (3) any person or persons to whom the property was entrusted (carriers for hire excepted). Cf. *Chadwick v. Aetna Ins. Co.*, 9 N.C.App. 446, 176 S.E.2d 352 (1970).

Because the loss in the instant case was caused by employee dishonesty, it was excluded from coverage by subsection (g) of the Perils Excluded provision of the general policy. Wexler's recovery, therefore, was limited to the $20,000.00 additional coverage it had purchased under the Employee Dishonesty endorsement. This being the only possible conclusion, the trial court did not err by refusing to remove the non-suit which it had entered against the plaintiff-appellant at trial.

Affirmed.