223 Cal.App.3d 452 (1990)
272 Cal. Rptr. 625
NATIONAL AUTOMOBILE AND CASUALTY INSURANCE COMPANY, Plaintiff and Appellant,
v.
THEA STEWART et al., Defendants and Respondents.
Docket No. A042979.
Court of Appeals of California, First District, Division One.
July 26, 1990.
*455 COUNSEL
Sedgwick, Detert, Moran & Arnold, Bruce D. Celebrezze, Frederick D. Baker and Scott Conley for Plaintiff and Appellant.
Janssen, Malloy, Marchi & Needham, Clayton R. Janssen, W. Timothy Needham, Davis, McClendon, Poovey, Anderson & Morrison, William R. McClendon III and John F. Donovan for Defendants and Respondents.
*456 OPINION
RACANELLI, P.J.
This is an appeal by National Automobile and Casualty Insurance Company (National) from a judgment declaring that an automobile insurance policy issued to respondent Judith Isenhart provided coverage for, and a duty to defend against, a claim brought by respondent Thea Stewart for injuries sustained in an accident involving an automobile operated by Isenhart's 16-year-old son, Matt. The pivotal issue presented is whether the phrase and definition of "nonowned automobile" is clear and conspicuous so as to preclude coverage under the terms of the insuring agreement. We will hold that it is as a matter of law and, accordingly, reverse the judgment.

FACTS
The relevant facts are not in serious dispute.
In February 1983, in connection with her purchase of a 1983 Dodge station wagon, respondent Isenhart acquired the subject policy covering the Dodge with liability exposure limited to $100,000 per occurrence and naming only her as the insured operator. Isenhart testified that she had asked her insurance agent, Ed Carpenter, to procure a policy providing "full coverage."
Carpenter testified as to his customary explanation of what full coverage normally included in terms of bodily injury and property damage, uninsured motorist, medical, comprehensive and collision coverage. Carpenter would tell his insurance clients to read the issued policy and then to contact him if they had any questions.
At the time the policy was issued to Isenhart, Matt was 14 years old. Upon attaining age 16 in July 1984, Isenhart agreed to finance Matt's purchase of an auto provided that his father, Dr. George Isenhart (who did not live in the same household), obtained auto insurance for Matt. On July 25, 1984, Matt purchased a 1969 VW (Volkswagen) which did not have seat belts installed. George Isenhart obtained insurance coverage for the VW through Allstate Insurance Company with a policy limit of $15,000. Judith Isenhart never told her insurance agent that her son had a driver's license and a VW auto registered in his name. She also stated that she had no expectations whether her National policy covered her for claims arising from the auto owned by her son.
On September 3, 1984, respondent Thea Stewart, a passenger in the VW being driven by Matt, sustained serious injuries when the car rolled over. *457 Thereafter, an action sounding in negligence was filed against the Isenharts and the State of California. Allstate tendered a defense for Matt and his mother and offered its policy limits. National declined to defend Isenhart and denied coverage on the basis that the insuring provisions and definitions expressly excluded an unnamed vehicle owned by a resident of the same household.
During the pendency of the underlying declaratory relief action filed by National, the Stewarts and Isenhart entered into a stipulated entry of judgment against Isenhart for $1.5 million in exchange for an assignment of her rights against National and the Stewarts' covenant not to execute on her assets.[1]
Following denial of both parties' motions for summary judgment, the matter proceeded to trial before the court without a jury. In its statement of decision, the court concluded that the definition of "non-owned automobile" was neither plain, clear nor conspicuous and defeated the insured's reasonable expectations of coverage for liability arising out of her use and maintenance of the auto owned by her son. The court also concluded that National owed Isenhart a duty to defend which it wrongfully breached. This appeal ensued.

DISCUSSION

I.
(1) The rules for construction and review of an insurance policy are well established: "`The policy should be read as a layman would read it....' (Crane v. State Farm Fire & Cas. Co. [(1971)] 5 Cal.3d 112, 115 [95 Cal. Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089].) `The insurer bears a heavy burden to draft exclusionary clauses in clear language comprehensible to lay persons.' (Stewart v. Estate of Bohnert [(1980)] 101 Cal. App.3d 978, 988 [162 Cal. Rptr. 126].) The words must be such that `an ordinary layman can understand.' (Thompson v. Occidental Life Ins. Co. (1973) 9 Cal.3d 904, 912 [109 Cal. Rptr. 473, 513 P.2d 353].) And an `insurer ... is bound to use language clear to the ordinary mind.' (Migliore v. Sheet Metal Workers Welfare Plan (1971) 18 Cal. App.3d 201, 204 [95 Cal. Rptr. 669].) (See also, e.g., Gefrich v. State Farm Mut. Auto. Ins. Co. (1980) 109 Cal. App.3d 500, 503 [166 Cal. Rptr. 516] [reduction in coverage must be `in plain and understandable language']; S & H Ins. Co. v. California State *458 Auto. Assn. Inter-Ins. Bureau (1983) 139 Cal. App.3d 509, 515 [188 Cal. Rptr. 722] [policy limitation approved expressly because it was `phrased in clear and understandable language.'].)" (Ponder v. Blue Cross of Southern California (1983) 145 Cal. App.3d 709, 723-724 [193 Cal. Rptr. 632].) Moreover, "[a]n exclusion in an adhesion contract of insurance must be expressed in words which are `plain and clear' [and] ... part of the working vocabulary of average lay persons." (Id., at p. 723; see also State Farm Mut. Auto. Ins. Co. v. Jacober (1973) 10 Cal.3d 193, 202 [110 Cal. Rptr. 1, 514 P.2d 953].)
Thus, our task is to determine whether a material uncertainty exists in the terms of the policy relating to coverage requiring resolution of such ambiguity in favor of the insured. (National Auto. & Cas. Ins. Co. v. Contreras (1987) 193 Cal. App.3d 831, 836-837 [238 Cal. Rptr. 627].)

II.
The National policy provides for indemnity coverage for damages legally incurred "arising out of the ownership, maintenance or use of an owned automobile or a nonowned automobile...." Under the heading of "Definitions" on page three, a nonowned automobile is highlighted in bold type and defined to mean "an automobile not owned by or furnished or available for the regular use of either the named insured or any resident of the same household, and includes, while used therewith, a home trailer not owned by the named insured or a utility trailer, but `non-owned automobile' does not include a temporary substitute automobile."
(2a) Thus, while the coverage clause may not alert the lay reader to the fact that the term "non-owned automobile" has a special definition found later in the policy, the insured is nonetheless responsible for reading the policy and knowing its contents (see Cal-Farm Ins. Co. v. TAC Exterminators, Inc. (1985) 172 Cal. App.3d 564, 579 [218 Cal. Rptr. 407]) particularly where, as here, the basic insuring language purports to include nonowned automobiles generally.
Testimony was adduced that the policy language was based on an old insurance services office form since replaced. A professor of linguistics called by respondents testified criticizing the structural format and grammatical context of the insuring clause and definitional limitations.
National steadfastly insists that the subject language is plain and clear and that the trial court erred in considering expert testimony as to the meaning and comprehension of the policy language. We agree.
(3) The interpretation of the terms of the written policy, in the absence of a relevant factual dispute, is typically a question of law. The opinion of a *459 linguist or other expert as to the meaning of the policy is irrelevant to the court's task of interpreting the policy as read and understood by a reasonable lay person (see Suarez v. Life Ins. Co. of North America (1988) 206 Cal. App.3d 1396, 1407 [254 Cal. Rptr. 377]; see also Hartford Accident & Indemnity Co. v. Sequoia Ins. Co. (1989) 211 Cal. App.3d 1285 [260 Cal. Rptr. 190]).
National cites a number of decisions involving insurance policies containing substantially similar limiting language in which it was found that the nonowned automobile definitions were plain, clear, and enforceable. However, none of the cited cases (reported in the margin) dealt with the precise issue presented but serve to illustrate the common forms of coverage limitation concerning use of a vehicle owned by a household resident.[2]
In California State Auto. Assn. Inter-Ins. Bureau v. Gong (1984) 162 Cal. App.3d 518 [208 Cal. Rptr. 649], the insured's minor son was the driver of a car owned by his adult son. The policy did not provide coverage for vehicles owned by residents of the insured's household. In a suit brought by the injured passenger, the issue was whether Insurance Code section 11580.1 (prohibiting exclusion of permissive users) was violated by this policy provision. In concluding no violation occurred, the court commented that the substantially identical policy provisions made manifest in "clear, plain and conspicuous terms" that no coverage was provided. (Id., at p. 523.)
(2b) In short, while the subject language is not a model of clarity, a common-sense reading makes the meaning readily apparent: coverage of a "non-owned" automobile means coverage for an automobile not owned by (or available for the regular use of) either the named insured or a resident of the same household. Had Isenhart read the policy terms, she would have *460 known and understood that no coverage was afforded for the automobile owned by her son Matt, a resident of the same household.

III.
(4) National also argues that, contrary to the finding below,[3] the definition of nonowned automobile is conspicuous.
Relying on S & H Ins. Co. v. California State Auto. Assn. Inter-Ins. Bureau, supra, 139 Cal. App.3d 509, National contends that the limitation on the use of nonowned automobiles set forth in the definition section in bold print and quotation marks is "sufficiently conspicuous and plain." (Id., at p. 516.) We note that in S & H Ins. Co.  unlike here  the definitions began on the first page of the policy. But limitations placed in the later definitions section of a policy are not necessarily hidden when, as here, bold face type highlights the limiting phrase. (Cf. U-Haul Co. of Southern Cal., Inc. v. State Farm Mut. Auto. Ins. Co. (1975) 50 Cal. App.3d 665, 668 [123 Cal. Rptr. 628].)
Moreover, argues National, the definitional limitation is not itself misleadingly placed under an unrelated title or located in the middle of "dense pack" text. (See, e.g., Ponder v. Blue Cross of Southern California, supra, 145 Cal. App.3d at pp. 722-723 [temporomandibular joint syndrome not defined in policy].)
Respondents counter that the policy actually defines away coverage in a location the policyholder might not be expected to look and that the "exclusion" could have been highlighted more effectively. (See Government Employees Ins. Co. v. Kinyon (1981) 119 Cal. App.3d 213, 226 [173 Cal. Rptr. 805] [expectation to find the restriction of coverage granted in the exclusion clause].) But a contractual insurance provision need not be "perfectly drafted" so long as it is "`conspicuous, plain and clear.'" (See Allstate Ins. Co. v. Condon (1988) 198 Cal. App.3d 148, 154 [243 Cal. Rptr. 623].)
We conclude that the insuring agreements and definitional limitations were set out in plain and clear language and in a reasonably conspicuous manner. We further conclude that an average person reading the coverage section for damages arising out of ownership, maintenance or use of an owned or nonowned automobile would reasonably be put on notice that a special meaning or construction of the antipodal terms is intended, thus necessitating a careful reading of the policy as a whole.

*461 IV.
National also contends that respondent Isenhart had no reasonable expectation of coverage. (5) Whether an insured's expectations under the contract are reasonable is, of course, a question of law. (Bohannon v. Aetna Casualty & Surety Co. (1985) 166 Cal. App.3d 1172, 1177 [212 Cal. Rptr. 848].)[4]
(6) "It is a basic principle of insurance contract interpretation that doubts, uncertainties and ambiguities arising out of policy language ordinarily should be resolved in favor of the insured in order to protect [her] reasonable expectation of coverage. [Citations.] It is also well established, however, that this rule of construction is applicable only when the policy language is found to be unclear. [Citations.]" (Producers Dairy Delivery Co. v. Sentry Ins. Co. (1986) 41 Cal.3d 903, 912 [226 Cal. Rptr. 558, 718 P.2d 920].) Here, as National correctly observes, respondents have not argued that the policy is ambiguous. Nor is our attention directed to any claimed ambiguity.
Moreover, it is not entirely settled whether requirements of clarity and conspicuousness apply in the absence of "disappointed" reasonable expectations. (See Ponder v. Blue Cross of Southern California, supra, 145 Cal. App.3d at p. 720.)
(7) But in any case, it seems reasonable to conclude that where the language limiting (as distinguished from excluding) coverage is plain, clear and conspicuous, the insured's subjective expectations are neither relevant nor determinative.
Clearly, an insurance company is entitled to limit its policy coverage as long as the limitation conforms to the law and is not contrary to public policy; when it has done so, the plain language of limitations must be respected. (Allstate Ins. Co. v. Thompson, supra, 206 Cal. App.3d at pp. 939-940; see also Lumberman's Mut. Cas. Co. v. Wyman (1976) 64 Cal. App.3d 252, 259 [134 Cal. Rptr. 318].) And limiting coverage for certain types of vehicles, including nonowned automobiles, is lawfully permissible. (See California State Auto. Assn. Inter-Ins. Bureau v. Gong, supra, 162 Cal. App.3d at p. 529.)
*462 Here, Isenhart expected and believed that she would be covered if she drove her car or anyone else's. In fact, her liability arose out of Matt's car, which she was not driving but was charged with negligently maintaining. It simply defies reason for her to believe that payment of the premium coverage for her one car with one driver also entitled her to extended coverage for any nonowned car, even driven by another person.
Bohannon v. Aetna Casualty & Surety Co., supra, 166 Cal. App.3d 1172, is instructive. There, the insured deleted a car in his household from coverage after giving it to his daughter. Following her accident, he argued unsuccessfully for coverage under the theory of negligent entrustment or maintenance. The court said: "Under Bohannon's construction of the policy, he could purchase several automobiles, give them to family members, and enjoy the benefits of coverage without ever having to pay premiums commensurate with the increased risk of insurance exposure." (Id., at p. 1177.) Though respondents deny the existence of similar policy reasons in the present case, the fact is Matt's insurer (Allstate) defended Isenhart and admitted its policy provided coverage for her negligent maintenance or entrustment. Of course, her National policy covered her liability for negligent entrustment or maintenance of her own described automobile if operated by a permissive user, but it did not and could not cover Matt's automobile as well.

V.
Finally, National insists that if there was no coverage under the policy, there was no duty to defend as found below.[5] Relying on Gray v. Zurich Insurance Co. (1966) 65 Cal.2d 263 [54 Cal. Rptr. 104, 419 P.2d 168], respondent contends that National was required to defend because the underlying action sought damages potentially within policy coverage.
This issue underscores the fundamental disagreement between the parties: whether the lack of coverage for nonowned automobiles is properly characterized as a definition of basic coverage or whether it must be considered as an exclusion. If it is an aspect of coverage, as National claims, the burden is on the insured to prove that he or she comes within the scope of the basic coverage. (Royal Globe Ins. Co. v. Whitaker (1986) 181 Cal. App.3d 532, 537 [226 Cal. Rptr. 435].) If the limit is seen as an exclusion from basic coverage, as respondents argue, the burden is on the insurer to prove it is plain, clear and conspicuous. (State Farm Mut. Auto. Ins. Co. v. Jacober, supra, 10 Cal.3d at p. 202.)
*463 Our discussion above fully examined the questions inherent in the latter approach. "[The insurer's] defense is based upon the definitions set forth in the `insuring provisions' of the policy. [The insured] contends the definitions are ambiguous and the `exclusion section' should have expressly limited coverage to an accident happening within the policy period. (8) However, before even considering exclusions, a court must examine the coverage provisions to determine whether a claim falls within the potential ambit of the insurance. [Citations.] Where the scope of the basic coverage itself clearly creates no potential liability under the policy, a court may not give it a `strained construction' to impose on an insurer a liability the insurer has not assumed. [Citation.] The burden is on the insured to prove that an event is a claim which falls within the basic coverage of the insurance." (Hallmark Ins. Co. v. Superior Court (1988) 201 Cal. App.3d 1014, 1017 [247 Cal. Rptr. 638].)
(9) National persuasively argues that it had effectively limited its coverage in a legally allowable manner which did not extend to the ownership, maintenance or use of the VW. The nature and kind of risk covered by the policy is a limitation upon the duty to defend. (Fresno Economy Import Used Cars, Inc. v. United States Fid. & Guar. Co. (1977) 76 Cal. App.3d 272, 280 [142 Cal. Rptr. 681].) As cogently explained by at least one court: "The present case is readily distinguishable from Gray and many of the cases following it, which have broadly interpreted the insurer's duty to defend. (See, e.g., Wint v. Fidelity & Casualty Co. (1973) 9 Cal.3d 257 [107 Cal. Rptr. 175, 507 P.2d 1383, 90 A.L.R.3d 1185]; Mullen v. Glens Falls Ins. Co. (1977) 73 Cal. App.3d 163 [140 Cal. Rptr. 605]; Val's Painting & Drywall, Inc. v. Allstate Ins. Co. (1975) 53 Cal. App.3d 576 [126 Cal. Rptr. 267].) In each of these cases, damage of the type covered by the policy had undisputably occurred, and the insurer relied on an unclear exclusionary clause in asserting it was not obligated to defend its insured. Here, on the other hand, the question concerns the scope of the basic coverage itself: did the federal actions potentially seek to recover for `property damage' covered by the Industrial and Mission policies?" (Giddings v. Industrial Indemnity Co. (1980) 112 Cal. App.3d 213, 218 [169 Cal. Rptr. 278].)
Our determination that National has plainly and conspicuously limited its basic coverage of owned and nonowned automobiles completely forecloses any tenable claim of a duty to defend owed by National in the related Stewart litigation. The trial court's contrary determination was erroneous.
*464 The judgment is reversed and the matter remanded to the trial court with directions to enter a judgment in favor of National consistent with the views expressed herein. Costs on appeal are awarded to appellant.
Newsom, J., and Stein, J., concurred.
NOTES
[1] During oral argument, respondents' counsel stated that a $3.76 million judgment was obtained against the State of California and that the assigned rights had been reassigned to the state and the judgment reduced to $3 million. Appellant's counsel asserts that Matt received a defense verdict.
[2] In S & H Ins. Co. v. California State Auto. Assn. Inter-Ins. Bureau (1983) 139 Cal. App.3d 509 [188 Cal. Rptr. 722], the court considered whether a six-wheeled nonowned vehicle came within the policy definition for nonowned automobile as including only four-wheeled vehicles, the key provision.

In Highlands Ins. Co. v. Universal Underwriters Ins. Co. (1979) 92 Cal. App.3d 171 [154 Cal. Rptr. 683] and McBride v. Farmers Ins. Group (1982) 130 Cal. App.3d 258 [181 Cal. Rptr. 539, 42 A.L.R.4th 1139], the determinative issue turned on the definition of the term "regular use" and apparent conflicting policy definitions of "nonowned automobile and substitute automobile," respectively.
National Auto. & Casualty Ins. Co. v. Contreras, supra, 193 Cal. App.3d 831, concerned a nearly identical policy but involved the issue whether a relative was covered for use of a truck when the provision covering use of nonowned vehicles restricted a relative's use to private passenger automobiles.
In Allstate Ins. Co. v. Thompson (1988) 206 Cal. App.3d 933 [254 Cal. Rptr. 84], the court affirmed a finding of noncoverage for an insured's unlicensed minor son driving a car he owned.
[3] The trial court found the claimed "exclusion" was not conspicuous because nothing in the insuring clause refers the policyholder to a special definition for the common word "nonowned," a limitation usually found in the exclusions section of a policy.
[4] In finding that Isenhart's reasonable expectations were disappointed, the trial court seemed to equate respondent's initial request for "full coverage" with universal coverage for all losses attendant upon her use of "any vehicle." Of course, coverage for her own vehicle and occasional use of nonowned vehicles was not in question.
[5] As noted, Allstate defended both Matt and his mother.