[No. C002563. Third Dist. Feb. 5, 1990.]

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff and Respondent, v. STEVEN E. CRANE, Defendant and Appellant.

COUNSEL

Wilcoxen, Callahan, Montgomery & Harbison, Gary B. Callahan, Mary-Angela E. Devlin, Susan A. Collier and Roger V. Jaffe for Defendant and Appellant.

Padway & Padway, Laurence F. Padway and Ernest M. Thayer as Amici Curiae on behalf of Defendant and Appellant.

McDonald, Saeltzer, Morris, Creeggan & Waddock, William O. Morris, Richard W. Sherwood, Gregory R. Madsen and J. Martin McAllister for Plaintiff and Respondent.

McCormick, Barstow, Sheppard, Wayte & Carruth, Wade M. Hansard and Jeffrey T. Hammerschmidt as Amici Auriae on behalf of Plaintiff and Respondent.

## OPINION

SIMS, Acting P. J.—Appellant Steven E. Crane is the plaintiff in a pending personal injury action. In this declaratory relief action, he appeals from the entry of summary judgment in favor of respondent State Farm Mutual Automobile Insurance Company, the insurer of defendants in the personal injury action. The trial court concluded State Farm was not liable for prejudgment interest pursuant to Civil Code section 3291 on any judgment which may ultimately be awarded against its insured. (All further undesignated code references are to the Civil Code.)

The applicable insurance policy provides the insurer's obligation to pay prejudgment interest is cut off when the insurer "offer(s) . . . the amount due under this coverage." We shall conclude State Farm cut off its obligation to pay prejudgment interest when it offered the policy limits in settlement to plaintiff before plaintiff's lawsuit was filed. We shall therefore affirm the summary judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 18, 1985, appellant Crane was rendered paraplegic in an accident while riding as a passenger in a vehicle owned by Michael White and driven with Michael's permission by Donald White. Michael White carried an insurance policy issued by State Farm covering the owner and permissive users of the vehicle. (See Ins. Code, § 11580.1, subd. (b)(4).) The policy limited liability for bodily injury for each person involved in an accident to $25,000. Other pertinent provisions of the policy are set forth in the margin.[1]

On July 8, 1985, before any suit had been filed, State Farm offered its policy limits of $25,000 to Crane "in full settlement" of Crane's claim. The offer was rejected.

---

[1] "SECTION I—LIABILITY—COVERAGE A

"You have this coverage if 'a' appears in the 'coverages' space on the declarations page.

"We will:

"1. pay damages which an insured becomes legally liable to pay because of:

"a. bodily injury to others . . . [¶] caused by an accident resulting from the ownership, maintenance or use of your car; and

"2. defend any suit against an insured for such damages with attorneys hired and paid by us. We will not defend any suit after we have paid the applicable limit of our liability for the accident which is the basis of the lawsuit.

"In addition to the limits of liability, we will pay for an insured any costs below resulting from such accident.

"1. Court costs of any suit for damages.

"2. Interest on all damages owed by an insured as the result of a judgment until we pay, offer or deposit in court the amount due under this coverage." (Original italics deleted.)

On July 31, 1985, Crane filed a complaint for personal injury against Michael White, Donald White and other defendants. On the same date, Crane filed an offer to settle for the sum of $499,999.99, pursuant to Code of Civil Procedure section 998. The offer was subsequently served on Michael White and Donald White, who rejected it.

On September 12, 1986, State Farm filed the instant action for declaratory relief, seeking a ruling that it would owe no prejudgment interest on any judgment which might be awarded against its insureds. It also offered to deposit its policy limits with the court pursuant to Code of Civil Procedure section 572.[2] Michael White, Donald White and Crane were named as defendants.

In January 1987, Crane moved for summary judgment and/or summary adjudication of issues on the question of prejudgment interest. State Farm then filed its own motion for summary judgment.

The trial court granted State Farm's motion, and Crane timely filed a notice of appeal from the summary judgment.

### DISCUSSION

I. *The State Farm Policy Obligates the Insurer to Pay Prejudgment Interest.*

■ If appellant Crane is entitled to prejudgment interest in this case, the entitlement is found in section 3291, which states in pertinent part: "If the plaintiff makes an offer pursuant to Section 998 of the Code of Civil Procedure which the defendant does not accept prior to trial or within 30 days, whichever occurs first, and the plaintiff obtains a more favorable judgment, the judgment shall bear interest at the legal rate of 10 percent per annum calculated from the date of the plaintiff's first offer pursuant to Section 998 of the Code of Civil Procedure which is exceeded by the judgment, and interest shall accrue until the satisfaction of judgment."

The parties agree that State Farm's obligation to pay prejudgment interest must be located in its insurance policy.

---

[2] Code of Civil Procedure section 572 provides: "*When it is admitted by the pleadings, or shown upon the examination of a party to the action, that he or she has in his or her possession, or under his or her control, any money* or other thing capable of delivery, which, being the subject of litigation, is held by him or her as trustee for another party, or which belongs or which is due to another party or *which should, under the circumstances of the case be held by the court pending final disposition of the action, the court may order the same, upon motion, to be deposited in court* or delivered to such party, upon those conditions that may be just, subject to the further direction of the court." (Italics added.)

■ "The interpretation of an insurance policy, like any other contract, is a matter of law as to which a reviewing court must make its own independent determination. [Citations.]" (*State Farm Fire & Casualty Co.* v. *Lewis* (1987) 191 Cal.App.3d 960, 963 [236 Cal.Rptr. 807].)

■ "As a general rule, ambiguities and uncertainties in a policy of insurance are resolved in favor of the insured. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168].) An insurance policy is not rendered ambiguous or uncertain, however, because of a strained or grammatically incorrect reading of the policy's terms. (*Atlas Assurance Co.* v. *McCombs Corp.* (1983) 146 Cal.App.3d 135, 144 [194 Cal.Rptr. 68].) 'Although we construe all provisions, conditions, or exceptions that tend to limit liability strictly against the insurer [citation], strict construction does not mean strained construction. [Citations.] We may not, under the guise of strict construction, rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid.' (*Safeco Ins. Co.* v. *Gilstrap* (1983) 141 Cal.App.3d 524, 532-533 [190 Cal.Rptr. 425].) ■ The words used in a policy of insurance are to be construed according to the plain meaning a layman would ordinarily attach to them, and the policy is to be construed as a whole, each clause helping to interpret the other. (*McBride* v. *Farmers Ins. Group* (1982) 130 Cal.App.3d 258, 260-261 [181 Cal.Rptr. 539, 42 A.L.R.4th 1139].)" (*Ray* v. *Farmers Insurance Exchange* (1988) 200 Cal.App.3d 1411, 1416 [246 Cal.Rptr. 593]; see *Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920].)

In short, an insurance contract is to be construed in a manner which gives meaning to all its provisions in a natural, reasonable, and practical manner, having reference to the risk and subject matter and to the purposes of the entire contract. (*Barrett* v. *Farmers Ins. Group* (1985) 174 Cal.App.3d 747, 750-751 [220 Cal.Rptr. 135].)

■ With these principles in mind, we shall examine the policy in this case. Of immediate concern is the following language: "In addition to the limits of liability, we will pay for an insured any costs listed below resulting from such accident.

"․ . . . . . . . . . . . . . . . .

"2. Interest on all damages owed by an insured as the result of a judgment until we pay, offer or deposit in court the amount due under this coverage."

State Farm argues it has no obligation to pay prejudgment interest under section 3291 because the law treats such interest as damages, not costs.

Hence, State Farm asserts the interest is not "costs" which State Farm is obligated to pay "in addition to the limits of liability."

State Farm's argument is premised on the location of section 3291 in article 2 of chapter 1, division 4, titled "Interest as Damages." The courts have construed the term *interest* in other sections within this article to mean an item of damages, not a cost apart from damages. (*Lineman* v. *Schmid* (1948) 32 Cal.2d 204, 209 [195 P.2d 408, 4 A.L.R.2d 1380]; *Canavin* v. *Pacific Southwest Airlines* (1983) 148 Cal.App.3d 512, 526 [196 Cal.Rptr. 82]; *Marine Terminals Corp.* v. *Paceco, Inc.* (1983) 145 Cal.App.3d 991, 998 [193 Cal.Rptr. 687]; *Big Bear Properties, Inc.* v. *Gherman* (1979) 95 Cal.App.3d 908, 912 [157 Cal.Rptr. 443].)

However, even assuming for the sake of argument the Civil Code characterizes section 3291 interest as damages, that assumption does not aid State Farm. Even if the law technically regards the interest as damages, it does not follow that a layperson reading the policy would reach the same conclusion. ██ The policy language must be read as a layperson would read it, not as it might be analyzed by an attorney or insurance expert. (*Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089].)

██ Reading the policy as a whole, we think a layperson would expect section 3291 interest to be covered by the language obligating State Farm to pay, in addition to the limits of liability, "Interest on all damages owed by an insured as the result of a judgment until we pay, offer or deposit in court the amount due under this coverage." After all, section 3291 interest meets the literal criteria of this policy language. The interest is calculated "on . . . damages owed by an insured as the result of a judgment . . . ." This language is the policy's only explicit reference to the payment of interest. If the language is ambiguous or uncertain, it must be interpreted in favor of the insured, since there is nothing unreasonable about the insured's preferred meaning. (See *Producers Dairy Delivery Co.* v. *Sentry Ins. Co., supra,* 41 Cal.3d at p. 912.) We therefore conclude section 3291 interest is a "cost" within the meaning of the policy language obligating State Farm for payment in addition to its policy limits for bodily injury.

Various out-of-state cases cited by State Farm are distinguishable because they involve insurance policies with different language. Thus, the policies at issue in *Nunez* v. *Nationwide Mut. Ins. Co.* (Me. 1984) 472 A.2d 1383 and *Guin* v. *Ha* (Alaska 1979) 591 P.2d 1281 contained no mention of interest at all. The policies at issue in *Factory Mutual Liability Ins. Co. of Amer.* v. *Cooper* (1970) 106 R.I. 632 [262 A.2d 370], *Walker* v. *Walker* (1967) 108 N.H. 341 [235 A.2d 520], and *Laplant* v. *Aetna Casualty & Surety Co.*

(1966) 107 N.H. 183 [219 A.2d 283], limited the insurer's obligation to pay only such interest as "accrues" or is "accruing" after entry of judgment. Appellant Crane concedes that such a clause limits an insurer's obligation to the payment of *post*-judgment interest.

II. *State Farm's Policy Limits Settlement Offer Cut Off Its Obligation to Pay Prejudgment Interest.*

 State Farm next argues it had no obligation to pay interest because it had offered to pay its policy limits of $25,000 before plaintiff ever filed his lawsuit. The policy states in pertinent part that State Farm is obligated to pay interest *"until we . . . offer . . . the amount due under this coverage."* (Italics added; see fn. 1, *ante.*)

Appellant Crane contends State Farm cannot rely on this limiting language. As best we understand the argument, Crane suggests that "this coverage" includes an obligation to pay interest. Crane apparently argues that State Farm cannot invoke the language of limitation unless State Farm first pays all prejudgment interest that may ultimately be assessed in a judgment. The point missed by Crane is that State Farm's obligation is to pay, offer, or deposit in court the amount *"due"* under the coverage.

Under section 3291, interest is assessed only when a plaintiff *obtains a judgment* that is more favorable than plaintiff's unaccepted offer pursuant to section 998 of the Code of Civil Procedure. Here State Farm offered its policy limits even before Crane made his Code of Civil Procedure section 998 offer. Hence, State Farm's offer of the policy limits was made when no section 3291 interest was conceivably due. State Farm had no obligation to pay amounts of interest not due. Thus, if State Farm's offer of the policy limits was valid, it extinguished State Farm's obligation to pay prejudgment interest, because the policy limits were the maximum then "due under this coverage." (See *Farmers Alliance Mut. Ins. Co.* v. *Bethel* (8th Cir. 1987) 812 F.2d 412, 413.)

Appellant Crane asserts State Farm's offer of July 8, 1985, was not a valid offer of "the amount due under [the] coverage," sufficient to stop the section 3291 interest clock from running. Crane contends State Farm's settlement offer had to be reasonable and in good faith. (See *Elrod* v. *Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 699-700 [241 Cal.Rptr. 108].) In other words, considering all circumstances, Crane argues there had to be a reasonable possibility the settlement offer would be accepted.

 State Farm is of the view that Crane has no "standing" to make this argument. Although State Farm named Crane as a defendant in its declaratory relief action (in which its insureds appeared without an attorney), State

Farm now asserts Crane cannot assert the lack of good faith of the settlement offer.

In support of this argument State Farm cites cases holding that, in the absence of an assignment from an insured, or a statute granting the remedy, an injured third party cannot sue an insurer for bad faith failure to settle. (See *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 295 [250 Cal. Rptr. 116, 758 P.2d 58]; *Coleman* v. *Gulf Ins. Group* (1986) 41 Cal.3d 782, 795 [226 Cal.Rptr. 90, 718 P.2d 77, 62 A.L.R.4th 1083]; *Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 942 [132 Cal.Rptr. 424, 553 P.2d 584]; *Zahn* v. *Canadian Indem. Co.* (1976) 57 Cal.App.3d 509, 513 [129 Cal.Rptr. 286].)

Putting aside the question whether, by having named Crane as a party, State Farm has waived or is estopped from complaining of Crane's participation in the lawsuit, the cited cases do not suggest Crane's participation is improper. Crane has not brought an action for recovery of money based upon the implied covenant of good faith and fair dealing. Rather, he has accepted State Farm's invitation to comment upon the proper meaning of policy language defining the extent of coverage. While the implied covenant is useful to that interpretation, the ultimate resolution of the dispute involves the meaning of specific policy language, i.e., State Farm's obligation to pay prejudgment interest as affected by its "offer" of its policy limits. It has long been recognized that injured third parties are proper defendants in an insurer's action for declaratory relief to determine the scope of coverage under its policy. (See, e.g., *General Ins. Co. of America* v. *Whitmore* (1965) 235 Cal.App.2d 670, 674-675 [45 Cal.Rptr. 556].) Indeed, if a judgment had been entered in this action, and had State Farm refused to pay prejudgment interest, Crane could litigate State Farm's interpretation of the policy language in an action authorized by Insurance Code section 11580, subdivision (b)(2).[3] (See *Shapiro* v. *Republic Indemnity Co. of America* (1959) 52 Cal.2d 437, 440 [341 P.2d 289].) We see no reason why an earlier adjudication, which could increase the prospects of settlement, should be unavailable. We therefore conclude Crane is a proper party and may raise any and all arguments bearing upon the proper interpretation of the policy.

However, we cannot agree that State Farm had to evaluate the likelihood of success of its settlement offer. Rather, in the present context,

---

[3] Insurance Code section 11580, subdivision (b)(2) requires that the policy at issue in this case contain, "A provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

State Farm's policy limits settlement offer was in good faith as a matter of law, for the following reasons.

First, an offer *conditioned upon settlement* is the only kind of prejudgment offer of policy limits allowed by the policy. The policy does not allow State Farm to make an unconditional *pre*judgment offer of payment of the policy proceeds, without a settlement, to a plaintiff suing the insureds. The policy language authorizing the insurer to "pay . . . the amount due under this coverage" to cut off its interest obligation may be applied in a straightforward manner in two situations. First, the language plainly allows the insurer to terminate its obligation to pay *post*judgment interest by paying the policy limits in partial or full satisfaction of a judgment. Second, the language allows the insurer to cut off its *pre*judgment interest obligation by paying the policy limits pursuant to a settlement.

Since the subject policy language is capable of these common applications, we do not think a layperson reading the policy would realize the language also authorized State Farm to make a payment that would bankroll a plaintiff's case against the insured. This is particularly so since the policy expressly gives the insurer "the right to investigate, negotiate, and settle any claim or suit." The implication of this language is that the insurer is authorized to settle lawsuits, not to pay unilaterally the policy limits to a plaintiff. Moreover, it is generally recognized that such an unconditional payment, which has the effect of bankrolling a plaintiff's case against the insured, is not made in good faith. (See *Merritt* v. *Reserve Ins. Co.* (1973) 34 Cal.App.3d 858, 871 [110 Cal.Rptr. 511]; *Pareti* v. *Sentry Indem. Co.* (La. 1988) 536 So.2d 417, 422-423.) If State Farm wants authority to make a payment recognized to be strongly against the interest of an insured, it must derive the authority from explicit language, not from language capable of other well recognized applications. The policy did not authorize State Farm to make a prejudgment payment of the policy limits without settlement to plaintiff. In short, State Farm made the only kind of prejudgment offer countenanced by the policy.

We also think the policy must be given a reasonable construction in relation to the obligation to pay prejudgment interest under section 3291. That statute imposes a penalty, in the form of prejudgment interest, on a defendant who fails to accept a settlement offer pursuant to Code of Civil Procedure section 998. However, when an insurer has offered its policy limits before receiving a Code of Civil Procedure section 998 offer, the insurer has done all within its power to effect a settlement. It would therefore be unfair to penalize an insurer for the failure to accept plaintiff's settlement offer in excess of the policy limits where the insurer has offered its limits and has therefore done all it can to achieve a settlement.

The result we reach finds some support in two cases cited by State Farm: *Farmers Alliance Mut. Ins. Co.* v. *Bethel, supra,* 812 F.2d 412, and *Bent* v. *Bostwich* (1986) 148 Mich.App. 184 [384 N.W.2d 124]. However, admittedly neither opinion offers much analysis of the issue.

In *Farmers Alliance,* an insured was sued for wrongful death and several times during the litigation the insurer offered its policy limits of $30,000 in settlement. After trial a judgment was entered against the insured for an amount in excess of $222,000. Some five weeks after entry of judgment the insurer offered to pay its $30,000 policy limits, apparently by depositing the sum in court and filing an interpleader action. (*Farmers Alliance, supra,* 812 F.2d at p. 413.) The plaintiff sought postjudgment interest for the five-week delay pursuant to a policy provision obligating the insurer to pay, " 'Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we *offer to pay* that part of the judgment which does not exceed our limit of liability for this coverage.' " (*Ibid.,* italics in original.) The court held "that [insurer's] many good faith offers to pay the full policy limits" satisfied the insurer's obligation. (*Ibid.*)

*Farmers Alliance* is only modestly helpful to State Farm on this point because it contains no discussion of possible bad faith and in fact concludes the insurer's offers *were* in good faith. However, the case does not suggest that the good faith of an offer must be based upon the likelihood of the offer's acceptance.

In *Bent* v. *Bostwich, supra,* 384 N.W.2d 124, the court held that an insurer was relieved of any obligation to pay prejudgment interest where it tendered its policy limits in settlement before a lawsuit was filed. The case is also of meagre import because it (a) fails to mention the applicable policy language and (b) contains no discussion of the good or bad faith of the offer.

This leaves us with considerations of the practical consequences of a rule we adopt. We are frankly wary of the consequences of a rule that would require the insurer to show its policy limits offer stood a reasonable chance of acceptance. That question involves a showing of whether a defendant has or is likely to have substantial assets, subject to execution, in addition to the policy limits. (See *Schmid* v. *Superior Court* (1988) 205 Cal.App.3d 1244 [253 Cal.Rptr. 137].) In the absence of such assets, a policy limits offer of settlement will usually be in good faith and will ordinarily be accepted by a prudent plaintiff, even if the policy limits are far less than damages, because the plaintiff will not want to spend additional resources on litigation that produces no practical economic gain. (*Ibid.*) Conversely, if the insured defendant has assets subject to execution substantially in excess of the policy limits, and if liability substantially in excess of the limits is provable,

a prudent plaintiff will not accept a policy limits settlement, because the plaintiff can maximize his or her economic gain by going to trial.

However, we are aware of no convenient way for a plaintiff to make a prejudgment evaluation of the assets of an insured defendant in order to ascertain whether the offer is in good faith.[4] Although evidence of insurance coverage is obtainable by discovery (Code Civ. Proc., § 2017, subd. (b)), a plaintiff often cannot discover other assets of a defendant unless a proper showing is made in connection with a claim for punitive damages. (See *Coy* v. *Superior Court* (1962) 58 Cal.2d 210, 223-224 [23 Cal.Rptr. 393, 373 P.2d 457, 9 A.L.R.3d 678]; § 3295.) "In an action in which financial information about a party does not go to the heart of the cause of action, a plaintiff who seeks only compensatory damages is not entitled to discovery relative to a defendant's financial worth." (1 DeMeo, Cal. Deposition and Discovery Practice, § 20.73, p. 20-91, fn. omitted; see *People* v. *Superior Court (Kardon)* (1973) 35 Cal.App.3d 710, 713 [111 Cal.Rptr. 14]; *Doak* v. *Superior Court* (1968) 257 Cal.App.2d 825, 827 [65 Cal.Rptr. 193, 27 A.L.R.3d 1362].) We believe that plaintiffs' inability to discover the assets of a defendant will cause some plaintiffs to refuse to accept policy limits settlement offers upon the hope of having the offer adjudged in bad faith and therefore entitling plaintiffs to prejudgment interest.[5] In short, we think the rule proposed by appellant Crane would unfortunately discourage settlements and would foster additional litigation over the issue of the good faith of settlement offers.

Finally, under the State Farm policy, the insurer can always cut off its obligation to pay prejudgment interest by depositing the policy limits in court pursuant to Code of Civil Procedure section 572. (See fn. 2, *ante.*) However, this procedure involves the filing of a declaratory relief action separate from the tort action. We think this procedure would be routinely used by insurers who would often be in doubt as to whether their policy limits offer was sufficiently in good faith to stop the running of prejudgment interest. We are not in favor of encouraging these additional lawsuits without good reason.

We therefore conclude State Farm did not have to show its policy limits settlement offer stood a reasonable possibility of acceptance. Rather, the offer cut off State Farm's obligation to pay prejudgment interest.

---

[4] In this case, we need not reach the question whether a defendant who makes a Code of Civil Procedure section 998 offer may have a duty voluntarily to disclose assets to a plaintiff to show the 998 offer is in good faith. (See *Elrod* v. *Oregon Cummins Diesel, Inc., supra*, 195 Cal.App.3d at pp. 699-700.)

[5] Plaintiffs' incentive to reject a policy limits offer is great in cases, such as this one, where the amount of prejudgment interest may exceed the policy limits.

DISPOSITION

The judgment is affirmed.

Marler, J., and Deegan, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.