[No. D051011. Fourth Dist., Div. One. Apr. 23, 2008.]

ROYAL INDEMNITY COMPANY, Plaintiff and Respondent, v.
UNITED ENTERPRISES, INC., et al., Defendants and Respondents;
OTAY LAND COMPANY et al., Movants and Appellants.

## COUNSEL

Shoecraft & Burton, Robert D. Shoecraft and Michelle L. Burton for Movants and Appellants.

Musick, Peeler & Garrett, Susan J. Field and Stephen M. Green for Plaintiff and Respondent.

Berman & Aiwasian and Steven M. Haskell for Defendant and Respondent Century Indemnity Company.

Sinnott, Dito, Moura & Puebla, W. David Campagne and J. Karren Baker for Defendants and Respondents American Home Assurance Company and New Hampshire Insurance Company.

Colliau, Elenius, Murphy, Carluccio, Keener & Morrow and Kevin M. Haithcox for Defendant and Respondent Continental Casualty Company.

Woolls & Peer and Jeffrey A. Dollinger for Defendant and Respondent Yosemite Insurance Company.

Dorn G. Bishop for Defendants and Respondents United Enterprises, Inc., United Enterprises, Ltd. and U.E. Limited, L.P.

OPINION

**HUFFMAN, J.**—In this insurance coverage action, plaintiff and respondent Royal Indemnity Company (Royal) sued its former insured, defendant and respondent United Enterprises, Inc.,[1] for declaratory relief to establish that Royal should not be obligated to provide liability insurance coverage under its 1960's-era policy purchased by United for its business that was operated on certain real property that United formerly owned (the subject property). During that period of time, United owned a trap and skeet shooting range located on the subject property, and environmental contaminants remain there. Other named defendants in the coverage action, and respondents in this case, are numerous other insurers that also provided liability policies at various times to United.[2]

This appeal stems from the trial court's order denying a motion to intervene in the Royal/United insurance coverage action, that was brought by appellant Flat Rock Land Company and its predecessor, Otay Land Company (collectively Flat Rock), who are the current owners of the subject property. (Code Civ. Proc., § 387; all further statutory references are to the Code of Civil Procedure unless noted.) In separate federal and state actions, Flat Rock has sued United and several other parties to seek recovery of environmental cleanup costs at the subject property, along with other relief.[3] In the federal action, Flat Rock has appealed an unfavorable summary judgment, and that appeal is pending. The related state action by Flat Rock against United has been stayed pending the outcome of that appeal.

On appeal, Flat Rock contends the trial court abused its discretion in denying its motion to intervene in the Royal/United coverage action because Flat Rock has a legitimate interest in making coverage arguments that may affect its possibilities of recovering damages and environmental cleanup costs from United. Flat Rock candidly explained to the trial court that it is interested in obtaining a settlement among all the insurers "because a lot of the issues in this case center around who's got coverage and what coverage is available." The trial court responded that neither public policy nor any existing authority would allow for such intervention at this time, because the

---

[1] Defendants and respondents also include United Enterprises, Ltd., and U.E. Limited, L.P. We refer to them collectively as United.

[2] The other named defendants and respondents, former insurers of United, have joined in the respondent's brief filed by Royal, with some additions. They are Century Indemnity Company, American Home Assurance Company, New Hampshire Insurance Company, Continental Casualty Company, and Yosemite Insurance Company. Our discussion of the position taken by respondent Royal on this appeal will also apply to these other insurance companies.

[3] *Otay Land Co. v. U.E. Ltd., L.P.* (S.D.Cal., No. 03 CV 2488 BEN (POR)) will be referred to here as the federal action. *Otay Land Co. v. U.E. Ltd., L.P.* (Super. Ct. San Diego County, No. GIC869480) is referred to here as the related state action.

proposed complaint in intervention addressed different issues and interests than were pursued in the underlying coverage action.

We conclude the trial court did not err in denying intervention because Flat Rock has not shown that it meets the applicable criteria under section 387, and its reliance upon cases such as *Thompson v. Mercury Casualty Co.* (2000) 84 Cal.App.4th 90 [100 Cal.Rptr.2d 596] (*Thompson*) and *Haynes v. Farmers Ins. Exchange* (2004) 32 Cal.4th 1198 [13 Cal.Rptr.3d 68, 89 P.3d 381] (*Haynes*) is inapposite. *Thompson* and *Haynes* were declaratory relief actions that each arose out of separate personal injury claims, and those declaratory relief actions were brought by injured third parties who sought policy interpretation rulings about vehicle permissive user coverage provisions. In those cases, all issues could be resolved through the participation of the existing parties, and the courts were not therefore required to address any issues regarding any proposed rights to intervene. Those cases are factually and procedurally distinguishable, and they do not represent authority for extending their rationale into the arena of liability policy interpretation, in the current factual and procedural context of a proposed intervention of a claimant into an existing declaratory relief action that deals with coverage disputes between insurer and insured. That is particularly the case here, in which the insurer and the insured are united in opposition to such proposed intervention, and where the insured does not appear to require any assistance in framing or presenting the subject coverage issues. Accordingly, we affirm the order denying intervention, since it does not represent an abuse of discretion nor an incorrect interpretation of case law.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Current Action Arising from Earlier Actions

Royal filed this lawsuit in April 2006 against United and the previous United insurers. It sought declaratory relief, reimbursement, and contribution, and attached as an exhibit to the complaint its own insurance policy. Royal believes there is no potential for coverage for United due to the lack of an occurrence in the nature of an accident. Also, the policy has certain exclusions, including one for "property damage to property owned or occupied by or rented to the Insured."

Royal's declaratory relief complaint also included an attachment, a copy of Flat Rock's federal complaint against United and others, for recovery of environmental response costs, damages, and other relief. Declaratory relief was sought by Royal, seeking a ruling that it had no duty to defend or indemnify United under its policy, and that it was entitled to reimbursement from United of defense

costs, and it sought declaratory relief regarding the limits of liability. As against the fellow insurers, it sought equitable contribution and indemnity.

In response, United and the other named defendants (the former insurers of United) answered the complaint and a case management conference was set. At the same time, Flat Rock's motion to intervene was set for hearing in March of 2007. At that time, mediation was being pursued, but there is no indication in the record whether it was successful.

### B. Motion to Intervene, Arguments and Opposition

Flat Rock sought leave to intervene in the Royal coverage action on the basis that it has a "direct and immediate interest in the litigation," justifying permissive intervention under section 387, subdivision (a). Flat Rock's interest in the litigation stemmed from its status as a party allegedly injured by the negligence of Royal's insured, United. Flat Rock contended that rulings without intervention could be made in its absence, regarding coverage, that would affect its rights to pursue Royal as a "potential" judgment creditor of United. Further, Flat Rock argued that its presence was necessary to raise all arguments bearing upon the proper interpretation of the Royal policy, to avoid any loss of a valuable source of funds (i.e., any future policy proceeds) to compensate it for damage caused by United. Although Flat Rock stated that it did not intend to litigate the merits of Royal's coverage position at the intervention stage, it nevertheless argued that it had meritorious arguments regarding coverage for the insured (United).

In support of its motion, Flat Rock supplied a copy of its own first amended complaint in the related state action against United, in which it sought to have United and other defendants contribute to the environmental cleanup effort expenses, together with other relief under the Carpenter-Presley-Tanner Hazardous Substance Account Act. (Health & Saf. Code, § 25300 et seq.) Unfair business practices allegations were also made. (Bus. & Prof. Code, § 17200.) A copy of the proposed complaint in intervention was also submitted, describing Flat Rock's previous federal action and the related separate state action, which remains pending. An adverse summary judgment ruling in the federal action is being appealed by Flat Rock, and the related state action has been stayed pending that appeal. The proposed pleading asserts that certain policy exclusions do not apply, and insurable "occurrences" took place on the subject property.

In response, Royal and all the other insurer defendants opposed the motion, essentially arguing this intervention request amounted to an end run around the "no direct action" rule established by Insurance Code section 11580, subdivision (b)(2). Royal contended that although an insurer could affirmatively confer standing upon a third party claimant by suing it in the insurer's

own declaratory relief action, that was not the case here. (*State Farm Mut. Auto. Ins. Co. v. Crane* (1990) 217 Cal.App.3d 1127, 1130–1135 [266 Cal.Rptr. 422] (*Crane*).) Further, Royal contended that without attaining judgment creditor status (an exception to the no direct action rule), Flat Rock could not participate iñ this action. (*Fireman's Fund Ins. Co. v. Gerlach* (1976) 56 Cal.App.3d 299, 301 [128 Cal.Rptr. 396] (*Fireman's Fund*).) Finally, Royal made policy arguments that the purposes which intervention is meant to serve, such as avoiding a multiplicity of actions or delay, operated in favor of denying intervention. (§ 387.) In particular, the existing parties are engaged in extensive preliminary disputes about the duty to defend and pay defense costs, as between Royal and United, such that the issues about indemnification are not yet being addressed, and the underlying federal action and the related state action remain pending.

United likewise opposed the motion, arguing that Flat Rock had no sufficiently direct interest in the lawsuit, because it had not yet obtained any judgment against United in the underlying federal or related state environmental actions. United stated that the current issues that were being addressed involved only the carriers' alleged duties to defend and/or pay United's defense costs incurred in the underlying action, and argued that Flat Rock had no right to participate in the resolution of those issues. Therefore, United contended it was premature for Flat Rock to try to litigate indemnity issues among the various insurers, since there was no judgment against United as yet, for which indemnity might be required, and Flat Rock should not be allowed to try to force a settlement. (As noted, mediation has been pursued at various times, but whether it has been successful is not stated.)

In reply, Flat Rock brought up as a new argument that *Thompson, supra*, 84 Cal.App.4th 90, and *Haynes, supra*, 32 Cal.4th 1198, should support its application to intervene. Flat Rock contends it is similarly situated to the plaintiffs in those cases, as an innocent third party claimant injured by negligence of the insured (United). Flat Rock represents that it is seeking to conserve valuable judicial resources by pursuing this intervention in the Royal declaratory relief action against United to determine coverage. As a potential judgment creditor, Flat Rock is vitally interested in the coverage issues.

## C. Ruling

On March 27, 2007, the trial court heard argument and confirmed its tentative ruling denying the motion. The court provided the following rationale for its ruling. First, it found that Flat Rock did not have a legally protectable interest in participating in the action, nor any such interest in the success of the insured, United. Instead, Flat Rock was merely a potential beneficiary of the insurance policy.

Second, Royal had not chosen to name Flat Rock as a party defendant, as was done by the insurer in one of the cases cited, *Crane, supra*, 217 Cal.App.3d 1127, so that Flat Rock's reliance on that case, in which an injured third party was allowed to litigate coverage issues, was inappropriate.

Third, *Thompson, supra*, 84 Cal.App.4th 90, and *Haynes, supra*, 32 Cal.4th 1198, were factually distinguishable, because those were personal injury actions in which an injured third party was allowed to sue the insured's liability carrier for declaratory relief to determine coverage issues that directly affected the subject claim. The court noted that the case before it, however, did not involve such injured third parties "who can pinpoint specific coverage issues affecting their claim without addressing the merits of the underlying action. To extend these cases to apply herein would inappropriately open a door for all potential judgment creditors to sue an insurer directly for declaratory relief before the merits of their claim against the insured [have] been adjudicated."

The court further distinguished cases in which third party judgment creditors were allowed to intervene in actions between an insurer and its insured. (*Fireman's Fund, supra*, 56 Cal.App.3d 299.) Flat Rock did not yet qualify as a judgment creditor of the insured, and further: "As a 'potential' judgment creditor these parties [Flat Rock/Otay] do not have a right to intervene because they do not yet have an interest to protect, i.e., a claim against the insurer. Moreover, no evidence has been provided to the court to establish that the insured in this action [United] will not adequately represent and defend its interests under its policies." The court therefore denied leave to intervene in the coverage action.[4]

Notice of the ruling was given and we may properly construe the order denying the motion to intervene as a judgment of dismissal. Flat Rock appeals.

## DISCUSSION

Flat Rock asserts the trial court abused its discretion in denying it leave to intervene, and argues that it has a sufficiently direct interest in participating in this action to qualify for intervention under section 387. Such an order denying intervention is appealable because "it operates as a final determination against the intervenor and is appealable as a *final judgment* against him.

---

[4] At oral argument, the parties discussed another related case in which Flat Rock sought to sue Royal directly for declaratory relief. That complaint was dismissed after a ruling on demurrer, and that ruling is currently on appeal to this court. (*Otay Land Co. v. Royal Indemnity Co.* (D052057, app. pending).) The issues raised in that separate appeal are not now before us and we express no views upon them at this time.

[Citations.]" (4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 203, p. 261; see *Bame v. City of Del Mar* (2001) 86 Cal.App.4th 1346, 1363 [104 Cal.Rptr.2d 183].) We review the trial court's ruling under an abuse of discretion standard. (*Reliance Insurance Co. v. Superior Court* (2000) 84 Cal.App.4th 383, 386 [100 Cal.Rptr.2d 807] (*Reliance*).)

At the outset, we note that Flat Rock's motion cited only to section 387, subdivision (a), and it mainly argued the issues regarding permissive intervention. On appeal, it contends its presentation to the trial court was broad enough to justify an order allowing mandatory intervention as well. (§ 387, subd. (b) [intervention as of right is allowed if particular provisions of law permit it, or if the requesting persons are so situated that their interests in the subject property or transaction may be impaired or impeded unless they are allowed to participate in the litigation].)

Theoretically, this court could address as a matter of law whether the criteria for mandatory intervention were met, such that the trial court might have exercised its discretion to allow it. However, as a practical matter, we note that if permissive intervention is not appropriate in this context, most likely, mandatory intervention would also not be proper. We accordingly first address the permissive intervention criteria, and will not address in detail the mandatory intervention issues, unless permissive intervention would have been justified. As we will show, it was not.

I

### APPLICABLE STANDARDS REGARDING INTERVENTION

■ In *City and County of San Francisco v. State of California* (2005) 128 Cal.App.4th 1030 [27 Cal.Rptr.3d 722] (*San Francisco*), the court outlined general guidelines for allowing permissive intervention. Under section 387, subdivision (a), the trial court in its discretion may allow a third party to intervene in litigation pending between other parties if " '(1) the proper procedures have been followed; (2) the nonparty has a direct and immediate interest in the action; (3) the intervention will not enlarge the issues in the litigation; and (4) the reasons for the intervention outweigh any opposition by the parties presently in the action. [Citation.]' [Citation.] The permissive intervention statute balances the interests of others who will be affected by the judgment against the interests of the original parties in pursuing their litigation unburdened by others. [Citation.]" (*San Francisco, supra,* at p. 1036.)

■ "To support permissive intervention, it is well settled that the proposed intervener's interest in the litigation must be direct rather than consequential, and it must be an interest that is capable of determination in the

action. [Citations.] The requirement of a direct and immediate interest means that the interest must be of such a direct and immediate nature that the moving party ' "will either gain or lose by the direct legal operation and effect of the judgment." [Citation.]' [Citations.] 'A person has a direct interest justifying intervention in litigation where the judgment in the action *of itself* adds to or detracts from his legal rights without reference to rights and duties not involved in the litigation. [Citation.]' [Citation.]" (*San Francisco, supra,* 128 Cal.App.4th 1030, 1037.)

■ Under California precedents, "an abstract interest is not an appropriate basis for intervention." (*San Francisco, supra,* 128 Cal.App.4th 1030, 1039.) In 4 Witkin, California Procedure, *supra,* Pleading, section 213 at page 274, the authors explain that intervention is often denied "on the ground that the asserted interest is 'indirect,' 'consequential,' or 'remote,' i.e., the threatened injury will not inevitably result from the judgment but rather from something done afterwards, pursuant to or as a consequence of the judgment. It is often said also that one cannot be permitted by intervention to 'enlarge the scope of the action' or 'broaden the issues' so as to litigate matters not raised by the original parties. [Citation.]" The Witkin authors go on to say: "All of these general declarations appear to have about the same meaning: The court must exercise its discretion in determining, in each case, whether the original action between the existing parties should be allowed to proceed undisturbed by an intervenor's claim; and the more indirect the connection of that claim with the issues raised in the original action, the less likelihood there is of the court permitting intervention. The decisions furnish illustrations but it is difficult to derive any principles from the opinions. [Citation.]" (4 Witkin, Cal. Procedure, *supra,* § 213, p. 274.)

The federal rules allowing permissive intervention are comparable. " 'Permissive intervention under [Federal Rules of Civil Procedure, rule] 24(b) is appropriate where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties.' [Citation.]" (*Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.* (11th Cir. 2005) 425 F.3d 1308, 1312 (*Mt. Hawley*).) Flat Rock contends this alternative federal rule should not be considered here. As we will explain in part II.B, *post,* federal case law in this area is instructive, even when we utilize California criteria for permissive intervention.

The correct approach to applying intervention rules requires us to take into account the factual and procedural context of the underlying action that would be joined by the intervener, to determine if that party has demonstrated it has a sufficiently direct interest in the subject matter of the action. In this insurance coverage context, Flat Rock characterizes itself as a potential

judgment creditor of United, and a potential beneficiary of the Royal policy, and it argues those are sufficiently direct interests to justify intervention. The nature of the underlying coverage dispute between Royal and United requires us to examine the rules governing the ability of a third party claimant, such as Flat Rock, to sue an insurer, in the first instance, to resolve coverage issues regarding an insured.

## II

## APPLICABLE STANDARDS REGARDING A THIRD PARTY CLAIMANT'S STANDING TO SUE UNDER A LIABILITY INSURANCE POLICY

### A. Background: California Law in Insurance Context, Regarding Standing

■ Flat Rock acknowledges that " '[g]enerally . . . an insurer may not be joined as a party-defendant in the underlying action against the insured by the injured third party. The fact that an insurer has agreed to indemnify the insured for any judgment rendered in the action does not make the insurer a proper party. Liability insurance is not a contract for the benefit of the injured party so as to allow it to sue the insurer directly.' [Citation.]" (*Royal Surplus Lines Ins. Co. v. Ranger Ins. Co.* (2002) 100 Cal.App.4th 193, 200 [122 Cal.Rptr.2d 459]; see *Shaolian v. Safeco Ins. Co.* (1999) 71 Cal.App.4th 268, 271 [83 Cal.Rptr.2d 702] [the insurer's duties flow to its insured alone].) In Croskey et al., California Practice Guide: Insurance Litigation (The Rutter Group 2007), paragraph 15:11, page 15-2 (Insurance Litigation), the authors cite that authority and then state that this "rule is the same in federal practice. [Citations.]"

Thus, as a third party who is not in privity of contract with the liability insurer (nor named as an express beneficiary of the policy), Flat Rock would normally lack standing to sue the insurer to resolve coverage questions about a tortfeasor, such as where there has been a failure to settle a claim under the policy. (Insurance Litigation, *supra*, ¶ 15:12, p. 15-2.) There are exceptions to this rule, and Flat Rock seeks to bring itself within those categories. The main exception is where the injured third party is a judgment creditor, who has standing as such to seek payment under the insurance policy. (Ins. Code, § 11580, subd. (b)(2); Insurance Litigation, *supra*, ¶ 15:15, p. 15-3.)

Another exception to these kinds of limitations on a third party claimant's standing to sue a liability insurer exists, e.g., where the claimant is an assignee of the insured's claims. (*Hamilton v. Maryland Casualty Co.* (2002) 27 Cal.4th 718, 732 [117 Cal.Rptr.2d 318, 41 P.3d 128]; Insurance Litigation, *supra*, ¶ 15:13, p. 15-3.)

Another recognized exception to the limitations on standing of a third party claimant against an insurer is found: Where "the liability insurance also provides medical payments coverage for anyone injured by the insured, the injured party may have a direct claim against the insurer for his or her medical expenses. I.e., the injured party is treated as an *additional insured* as to the medical payments coverage." (Insurance Litigation, *supra,* ¶ 15:16, p. 15-3.)[5]

■ Next, where the insurer itself is seeking to obtain declaratory relief against a third party claimant, courts may allow coverage issues to be resolved in that format. "Similarly, if a liability insurer joins the injured third party as codefendant in a declaratory relief action to determine coverage, the third party may raise coverage issues in that action (rather than waiting until after a judgment is obtained and suing as judgment creditor . . .) . . . ." (Insurance Litigation, *supra,* ¶ 15:21, p. 15-4; see also *Crane, supra,* 217 Cal.App.3d 1127, 1130–1135.)

Intervention may also be allowed in the insurance context, where third party claimants are involved, when the insurer is allowed to take over in litigation if its insured is not defending an action, to avoid harm to the insurer. For example, in *Truck Ins. Exchange v. Superior Court* (1997) 60 Cal.App.4th 342 [70 Cal.Rptr.2d 255] (*Truck*), the plaintiffs were two liability insurers who sued their insured, a contractor, to seek rescission of their insurance policies due to its fraud. The insured was a suspended corporation and could not defend itself in this rescission action. Meanwhile, the insured was being separately sued by third parties for defective work, and was being defended by a third insurer, Truck. In order to protect its own interests, Truck moved to intervene in the first action, "on behalf" of the insured, so that it

---

[5] As further explained in Insurance Litigation, paragraphs 12:10 to 12:12.1, page 12A-3, "[12:10] . . . Liability insurance policies often contain 'first party' coverages that may provide certain benefits to third parties as well as to the named insured. [¶] [12:11] Homeowners and automobile insurance policies usually provide medical expense coverage (a 'first party' coverage) in addition to liability insurance. For example, the medical expense coverage in an automobile insurance policy usually covers *both the driver and occupants* of the insured auto; and the medical expense coverage in a homeowners policy usually covers both the insured *homeowner and guests and invitees.* [¶] (Coverage is often provided by defining 'Insured person' to include 'you or any other person . . . while occupying the insured car' or 'while a guest upon the insured's premises.') [¶] [12:12] Claims under these coverages may be made *directly* against the insurer by the injured party; e.g., the occupant of an insured car may sue the insurer directly for his or her medical expenses. These are *not* 'third party' claims. Rather, the third party is an *additional insured* under the policy, and the claim is really a 'first party' claim. [*Harper v. Wausau Ins. Co.* (1997) 56 [Cal.App.4th] 1079, 1089 66 [Cal.Rptr.2d] 64, 69–70—medical coverage provision in premises liability policy] [¶] [12:12.1] Such provisions are not dependent on the liability of the insured. They create a separate contractual obligation by the insurer to the intended beneficiaries. [Citation.]" In *Harper,* the court used a contractual analysis and did not address any bad faith claims by the injured claimant. (*Harper, supra,* 56 Cal.App.4th 1079, 1082, fn. 1, 1090.)

could defend against the rescission claims, in the hope that it could obtain contribution from the other insurers. The appellate court allowed such intervention by Truck, because it had independent standing to preserve its right to seek contribution. (*Id.* at p. 349.) Truck had a direct interest in the outcome of the rescission litigation, and the other insurers had not shown any prejudice, "other than being required to prove their case." (*Id.* at p. 351, cited in 4 Witkin, Cal. Procedure (2007 supp.) Pleading, § 211, pp. 75–76; see also *Reliance, supra,* 84 Cal.App.4th 383, 386; Insurance Litigation, *supra,* ¶ 15:42, p. 15-6.)

Flat Rock mainly relies on the authors of the practice guide, Insurance Litigation, for their description of *Thompson, supra,* 84 Cal.App.4th 90, 92–93, as representing a statement about a newly created and additional exception to the general rule that disallows direct third party claimant actions against liability insurers. We now quote that description, which is based on *Thompson*'s interpretation of policy language by way of declaratory relief: "An injured third party may sue the insured's liability insurer for declaratory relief to determine coverage issues affecting the claim. [Citation.]" (Insurance Litigation, *supra,* ¶ 15:20, p. 15-4.)

However, the authors of Insurance Litigation limit the above statement by noting that in *Shaolian v. Safeco Ins. Co., supra,* 71 Cal.App.4th 268, 271–275, it was held that an injured third party cannot sue an insurer, under medical payments coverage that is limited to injuries "caused by activities of an insured," until the injured party has obtained a judicial determination that the insured was at fault. (Insurance Litigation, *supra,* ¶ 15:17, p. 15-3.) Also in that treatise, the procedural context and holding of *Shaolian, supra,* at pages 273 through 275, are set forth: "Medical expense coverage may extend to injuries '*caused by*' the insured away from the insured premises. The causative restriction is interpreted to mean the insured is *liable* for such injuries. Therefore, the injured party *cannot* sue the insurer directly until there has been a judicial determination that the insured was at fault. [Citation.]" (Insurance Litigation, *supra,* ¶ 12:12.2, p. 12A-3.)

We next outline Flat Rock's contentions for why it should fall within some of these exceptions to the general rules against allowing third party claimants to sue a liability insurer directly, and why it might be allowed to intervene. First, however, we address the United argument that we should follow "well-settled federal precedent denying a party in [appellants'] position the right to intervene."

B. Background: Federal Intervention Law in Insurance
Context

In *Liberty Mut. Ins. Co. v. Treesdale, Inc.* (3d Cir. 2005) 419 F.3d 216, 219 (*Liberty Mutual*), the federal court considered an intervention issue in an insurer's declaratory judgment action against its insureds, who were manufacturers of asbestos products that had injured third party claimants (appellants). The claimants/appellants sought to intervene, arguing that the insurer owed coverage to its insured, and their right to recovery for their injuries could be adversely affected based on those coverage determinations. However, the federal court found that the injured parties had not established a sufficient interest to intervene as of right: "Appellants cite no controlling authority to support their argument that plaintiffs who have asserted tort claims against the insured can intervene as of right in an insurance coverage declaratory judgment action between the insured and its insurer." (*Id.* at p. 223.) They did not yet have judgments against the insured.

Thus, in *Liberty Mutual*, permissive intervention was properly denied, due to the lack of common questions of law or fact between the personal injury actions against the insured, and the declaratory relief action between the insured and the insurer on coverage issues. The court said: "The declaratory judgment action turns on the interpretation of the contracts of insurance . . . . It has nothing to do with whether [insured] caused [environmental] injuries to Appellants or anyone else. Similarly, the [environmental] injury suits against [insured] have nothing to do with interpreting [its] insurance policies with [insurer]. Where a proposed intervenor has only a contingent financial interest in a declaratory judgment action to establish insurance coverage, he/she can not accurately claim that there are common questions of law or fact between the coverage dispute and actions to determine liability for injuries [insured] may have caused. [Citation.]" (*Liberty Mutual, supra,* 419 F.3d 216, 227–228.)

In another federal case, *Mt. Hawley, supra,* 425 F.3d 1308, 1311, the federal court found intervention by a personal representative of a decedent was inappropriate with respect to a declaratory relief action between an insurer and the insureds, to resolve coverage issues about the insureds. The personal representative was contending that the negligence of the insureds led to the death of the decedent. However, the court ruled that the primary issues in the two cases were different. The declaratory judgment action involved whether the insurer owed coverage to its insureds, and "[t]he issue of insurance coverage is unrelated to the issue of fault in the wrongful death action." (*Id.* at p. 1312.) It was not enough of a direct interest for the personal representative to claim that policy proceeds should potentially be available to

him. Such an interest was "purely speculative because it is contingent upon his prevailing against [insureds] in the [environmental] action." (*Id.* at p. 1311.)[6]

▇ The rationale of these federal cases, in analogous procedural settings, provide helpful illustrations of the kinds of concerns to be accommodated in such intervention decisions regarding insurance actions. We may properly consider such analyses together with the criteria that must be considered under California law.

### C. Effect and Extent of *Thompson/Haynes* Authority

To analyze whether Flat Rock has shown the kind of sufficiently direct interest that will support intervention, we turn to the only cases that it contends will support its position. *Thompson, supra,* 84 Cal.App.4th 90, 94, was a declaratory relief action brought by a third party claimant who was injured in a vehicle collision. The claimant, Thompson (and spouse), sued the insurer of the owner of the other vehicle involved in the accident, which at that time was being driven by a permissive user, who then collided with the claimant's car. The injured claimant sued the insurer directly, after making a claim under the owner's automobile insurance policy, and after settlement efforts had failed. The injured person therefore sought, on her own behalf, declaratory relief that the subject policy failed to state, with the requisite clarity and conspicuousness, that certain limitations on permissive user coverage applied, and she therefore argued a higher coverage limit would be proper under the remainder of the policy. (*Id.* at pp. 93–94.) In *Thompson,* the insurer apparently did not raise any objections to that declaratory relief format of the proceeding. The insurer filed an answer, as well as a cross-complaint against the injured person, the owners, the permissive driver, and his passenger at the time. (*Ibid.*) The trial court, and later the appellate court, had before it all the parties, and in interpreting the policy, resolved only one narrow question of law: Whether certain exclusionary or limiting language on permissive user coverage contained in the owner's liability insurance policy was sufficiently conspicuous to be enforceable. (*Id.* at p. 94.) This required interpretation, as a matter of law, of the policy language and structure. The court concluded that the confusing placement of liability limitations for permissive users, located far away from the "Liability" section of the policy, did not allow those limitations to be enforced. (*Id.* at pp. 97–98.) However, the court never had any intervention issues before it, and none was addressed.

Flat Rock thinks that the procedural context of *Thompson, supra,* 84 Cal.App.4th 90, is similar enough to support its own request for intervention

---

[6] As federal authority, Flat Rock relies on a case in which the interveners had a judgment against the insureds in a separate action. (*Teague v. Bakker* (4th Cir. 1991) 931 F.2d 259.) Flat Rock is not yet in that position and cannot properly rely on that case.

in an existing coverage action. It likewise relies on *Haynes, supra,* 32 Cal.4th 1198, in which the Supreme Court considered permissive user policy interpretation arguments on a de novo basis, as questions of law. *Haynes* was a declaratory relief action brought by an injured third party (an automobile accident victim who was a passenger in a car being driven by a permissive user), against the insurer of the owner of the car. Previously, the injured passenger had sued the owner and the permissive user in tort to recover damages for his injuries. He then found it necessary to file this separate action for declaratory relief, to seek a declaration of the rights and liabilities between himself and the insurer, "specifically a declaration that the endorsement's limitation of permissive user coverage is unenforceable." (*Id.* at p. 1203.) There was no objection by the insurer or anyone else to this form of requested relief. In *Haynes,* the Supreme Court ultimately held that the insurer was not entitled to summary judgment for declaratory relief that its separate endorsement, limiting permissive user coverage to a minimal amount, should control over the larger amounts of coverage listed on the declarations page, because the limitation was not sufficiently clear, plain and conspicuous. (*Id.* at p. 1198.)

In reaching its conclusions in *Haynes,* the Supreme Court relied upon *Thompson* as support for its interpretation of the permissive user coverage clause in the insurance policy: "California courts have recognized that an insured bargains for liability limits not only for himself, but also for permissive users. Indeed, 'liability limits are among the few policy features actually bargained for between the insurer and insured. . . . [And,] even if an insured does not specifically seek out high limits of coverage for permissive users,' he generally expects that any increases in liability limits will apply to everyone covered." (*Haynes, supra,* 32 Cal.4th at p. 1214, citing *Thompson, supra,* 84 Cal.App.4th at p. 97.)

Flat Rock cannot properly rely on the opinions in either *Thompson, supra,* 84 Cal.App.4th 90, or *Haynes, supra,* 32 Cal.4th 1198, to support its claim that it should be entitled to intervene in this existing coverage dispute. In *Thompson, supra,* 84 Cal.App.4th 90, and *Haynes, supra,* 32 Cal.4th 1198, the courts were confronted with parties who impliedly conceded that there was a need for a substantive interpretation of certain policy language, de novo, through litigation of declaratory relief actions brought by third party claimants under the policies, whose interests were not being adequately represented by any of the existing parties. Instead, the injured claimants' arguments were directed toward particular coverage issues affecting permissive users in specific fact situations involving personal injury, and only certain specialized types of coverage were involved. Due to those unique circumstances, neither the insured vehicle owner nor the permissive user tortfeasor had any particular interest in gaining declaratory relief to require a higher coverage level to become available, due to separate limitations endorsements in the policies

that were arguably inadequate or unenforceable. There was no objection raised by those insurers to a patently obvious need for declaratory relief about the enforceability of its policies, as sought by someone who was not directly in alignment with the positions of the insured or an additional insured. (See fn. 5, *ante*.) In those cases, the courts were not presented with and accordingly did not address any intervention policy considerations or similar discretionary concerns. In contrast, the existing parties in the case before us are vigorously resisting the proposed intervention on numerous grounds.

■ Another unique feature about the coverage disputes in *Thompson, supra*, 84 Cal.App.4th 90, and *Haynes, supra*, 32 Cal.4th 1198, was that those accidents were one-time occurrences involving multiple parties, which raised different issues than the long-term environmental contamination liability questions being litigated in the underlying actions. Moreover, the case before us involves extensive preliminary disputes about the duty to defend and pay defense costs, as between Royal and United, and the issues about indemnification have not yet been brought to the forefront. Under all these circumstances, *Thompson* and *Haynes* simply do not assist us in determining whether the trial court in this case abused its discretion in denying intervention. (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689] ["an opinion is not authority for a proposition not therein considered"].) The practice guide's interpretation of *Thompson* for its conclusion about the ready availability of declaratory relief in the coverage context is overstated and overbroad. (Insurance Litigation, *supra*, ¶ 15:20, p. 15-4.)

Instead, to resolve this appeal, we must apply the usual standards for evaluating intervention requests in this specific context of coverage disputes. We take into account the general statutory and policy rules that restrict third party claimant direct actions against insurers, where no liability determinations have yet been made, and we then consider whether any exceptions to those rules apply here.

### D. Analysis of Denial of Intervention

Under California law, Flat Rock cannot show an adequately direct interest to obtain intervention in this insurance coverage action. Flat Rock is a third party who is not in privity of contract with the liability insurer, nor is it any kind of additional insured under this type of policy. It lacks standing to sue the insurer to resolve coverage questions about United's rights under the policy. (Insurance Litigation, *supra*, ¶ 15:12, p. 15-2.) Moreover, it does not fall under any of the recognized exceptions to this rule. Flat Rock is not a judgment creditor, who would have standing as such to seek payment under the insurance policy. (Ins. Code, § 11580, subd. (b)(2).) It is not enough for Flat Rock to call itself a "potential" judgment creditor, or a "potential" beneficiary under the insurance policy.

Nor does Flat Rock qualify as an assignee of any of the insured's rights. Nor does it fall within the category described in *Truck, supra,* 60 Cal.App.4th 342, in which an insurer can protect its own rights by intervening in an existing insurance coverage action. That insurer, Truck, was entitled to independent standing to preserve its right to seek contribution. (*Id.* at p. 349.) That is not the case here. Only abstract rights and interests have been asserted by Flat Rock, and they are too indirect, remote, and consequential. (4 Witkin, Cal. Procedure, *supra,* § 213, pp. 274–275.)

■ Although a liability insurer is allowed to affirmatively join an injured third party as a codefendant in a declaratory relief action to determine coverage, the insurer is not required to do so. (*Crane, supra,* 217 Cal.App.3d 1127, 1135; *Canadian Ins. Co. v. Rusty's Island Chip Co.* (1995) 36 Cal.App.4th 491, 496–497 [42 Cal.Rptr.2d 505]; Insurance Litigation, *supra,* ¶ 15:21, p. 15-2.) It is a valid concern here that the existing parties oppose intervention. They are currently addressing their disputes about the duty to defend and pay defense costs, before the related issues about indemnification, and the trial court could properly take the progress of the litigation into account. The courts allow insurers to have some freedom to control the scope of litigation they initiate, and judicial economy is promoted thereby. The opposite would be true here if intervention were allowed, since it has not been shown that United is incapable of defending its own interests as the insured. Flat Rock does not yet have a protectable interest in the insurance proceeds, if any. It would be premature at this point for us to discuss any hypothetical collateral estoppel effect of any future judgment in this action upon any later claims by Flat Rock under the policy.

Here, as in *Mt. Hawley, supra,* 425 F.3d 1308, it is not enough of a direct interest for Flat Rock to simply claim that policy proceeds from Royal, based upon future coverage of United, should potentially be available to it. Such an interest is "purely speculative because it is contingent upon [its] prevailing against [insureds] in the [environmental] action." (*Id.* at p. 1311.)

■ Here, as in *Liberty Mutual, supra,* 419 F.3d 216, this declaratory relief action will be resolved through interpretation of the contract of insurance. "It has nothing to do with whether [insured] caused [environmental] injuries to Appellants or anyone else. Similarly, the [environmental] injury suits against [insured] have nothing to do with interpreting [its] insurance policies with [insurer]. Where a proposed intervenor has only a contingent financial interest in a declaratory judgment action to establish insurance coverage, he/she can not accurately claim that there are common questions of law or fact between the coverage dispute and actions to determine liability for injuries [insured] may have caused. [Citation.]" (*Id.* at p. 228.)

 In conclusion, Flat Rock's assertion on appeal that the trial court abused its discretion by incorrectly denying it leave to intervene is unsupported by authority or public policies such as judicial economy.

## DISPOSITION

The judgment of dismissal is affirmed. Appellants to pay all costs on appeal.

Benke, Acting P. J., and Haller, J., concurred.

On May 7, 2008, the opinion was modified to read as printed above.